# Fowler v. Alabama Iron & Steel Company.

### Bill to Quiet Title.

(Decided November 7, 1914. 66 South. 672.)

1. *Quieting Title; Bill; Possession.*—A bill to quiet title alleging that the grantee of mineral rights in certain lands assessed them for taxes and paid the taxes thereon; caused test pits to be dug thereon, went upon them from time to time to look after them, or to show them to purchasers, does not show possession as a conclusion of law, and should allege directly that complainant was in possession.

2. *Equity; Laches; Notice of Fraud.*—Where an agent to purchase land, in actual fraud of the rights of his principal, took title in the name of his infant son, which, with the exception of the middle initial, was the same as his own, and thereafter executed a deed conveying the premises to his principal in which he recited that the premises were the same lands as was conveyed to him, and the deed to the son was not recorded for more than eighteen years, the principal and his successor in title were not required, as is ordinarily the case, to examine the deed to the agent, so as to have constructive notice of the fraud, but actual notice thereof to them must be shown before their rights can be barred by laches, regardless of the length of the delay.

3. *Same; Nature.*—Laches is a shield and not a sword, and precedent is not allowed to control particular cases, though in harmony with well established principles; each case should be considered and determined upon its own peculiar facts.

4. *Trusts; Constructive; Fraud.*—Where an agent purchased land in actual fraud of his principal, taking title in the name of his infant son, which was similar to his own, the infant son became trustee for the principal of the father, and liable for the representations made by the father just as if they had been made by himself when sui juris.

APPEAL from Etowah Chancery Court.

Heard before Hon. W. W. WHITESIDES.

Bill by the Alabama Iron & Steel Company to quiet title to land, and for an injunction. Decree for complainant and respondent appeals. Affirmed.

The original bill of complaint shows that complainant acquired the mineral interests on July 5, 1900, in certain lands from one J. M. Elliott; that said Elliott acquired the same interest on June 4, 1900, from one Crawford; that said Crawford acquired it on July 3, 1882, from one Beers; and that Beers acquired it on June 28, 1882, from Samuel T. Fowler. The bill shows, also, that Samuel T. Fowler was employed by said Beers to purchase the land in question either as agent for Beers or for Crawford, Beers or Crawford furnishing the purchase money; that said Fowler as such agent bought the lands with the money so furnished, his compensation to be the surface interest in the land, and that on June 17, 1882, instead of taking the deed to himself, he procured from the vendor, one Arnold, a deed to his infant son, Samuel O. Fowler, then but three or four years of age. The bill avers that if complainant is mistaken in this charge, the fact is that the conveyance from Arnold was made to Samuel Fowler, and at some later date altered by Samuel T. Fowler so as to read to Samuel O. Fowler. This deed from Arnold to Fowler was not recorded until June 4, 1900, the date of the conveyance from Crawford to Elliott,

at which time both Beers and Arnold were dead. The bill charges that the mineral interest in the land was wrongfully or fraudulently placed in the name of Samuel O. Fowler, who has now filed a suit in ejectment against complainant, and prayer of the bill is as stated above, and that the legal title in Samuel O. Fowler be divested out of him and vested in complainant. The chancellor overruled a demurrer to the original bill, but on appeal to the Supreme Court the demurrer was sustained on the ground pointing out laches, and complainant filed the following amendment:

That at the time said Beers and said Samuel T. Fowler were purchasing the aforesaid mineral rights for said A. J. Crawford, said Crawford did not reside near said land, but resided in the state of Indiana. That at that time, nor at any time thereafter, did said Beers reside on or near said land or in the vicinity thereof, but resided in Jefferson county, Ala., or some other county in which said lands did not lie. That said A. J. Crawford continued to reside in the state of Indiana until he sold said lands to J. M. Elliott, Jr., as herein set forth. That from the time said Crawford received the conveyance to the mineral interest in question as herein set out he assessed said mineral interest for taxes each and every year, and, paid the taxes thereon and exercised various acts of ownership of said mineral interests, in that he caused test pits to be dug thereon, for the purpose of exploring the minerals and ascertaining their quality and extent, in going upon the land and looking after them from time to time, or causing persons to go upon them, and accompanying or causing his agents to accompany prospective purchasers to said mineral interest, showing them to said prospective purchasers in efforts to sell them. That during all this time, and up till about the year 1903,

neither Crawford nor Elliott nor complainant ever heard of respondent setting up any claim of ownership to said mineral interest, or exercising any rights of ownership over the same, nor did said Crawford, Elliott, or complainant ever know of said deed which purports to have been made by Arnold and wife to Samuel O. Fowler until on or about the year 1903, when a copy of it was discovered of record in the office of the judge of probate of St. Clair county. That said Crawford had been asserting ownership and exercising ownership of said mineral interests ever since he had acquired the deed thereto as herein set out, and that said purported deed from Arnold and wife to Samuel O. Fowler was not placed of record until after J. M. Elliott, Jr., had procured the record of St. Clair county to be examined just before he purchased said mineral interest, together with other lands and interests, from said A. J. Crawford, and until the very day that said Crawford and wife conveyed said mineral interest, together with other lands and interest to said J. M. Elliott, Jr. That at the time said deed was placed on record, both Arnold and Beers were dead, and at the time a copy of said deed was discovered of record in said probate office, said Crawford was dead. That in 1900, when said Elliott acquired said mineral interest, together with other lands, he took possession of said mineral interest, opening the old test pits, examining the minerals and otherwise exploring for minerals and keeping trespassers off, essessing them for taxes, and paying the taxes thereon, and continuing in said possession up until he conveyed the same to complainant, and that since that time the said Alabama Iron & Steel Company has been in possession of said mineral interests, claiming to own them. In the first part of the year 1903, complainant learned

that the purported deed. from Arnold and wife to Sam-
uel O. Fowler was of record in the office of the judge
of ·probate of St. Clair county, and. that said Fowler
was asserting title to said minerals in said land, and
on June 17, 1903, this complainant filed its bill in the
chancery court of St. Clair county against the Ala-
bama Iron & Steel Company for the purpose of quiet-
ing title to the mineral interests (a copy of the bill
being hereto attached and marked "Exhibit A," and
prayed to be taken as a part of the bill of complaint).
On January 10, 1906, the chancellor rendered a decree
settling the title to said mineral interests in favor of
complainant, from which decree the said Samuel O.
Fowler took an appeal to the Supreme Court of Ala-
bama, and on July 2, 1907, the Supreme Court ren-
dered a .decree reversing said decree of said chancel-
lor and dismissing the bill by ·a majority of one judge,
four judges having joined in the order of reversal, and
three dissenting from said order.  On July 22, 1907,.
said Fowler filed his suit in ejectment against this
complainant to recover possession ·of said mineral in-
terests, and on July 16, 1907, complainant filed this
original bill.

A demurrer was interposed to the amended bill on
the grounds substantially that it failed to show that
Beers was ignorant of the conveyance to Samuel O,
Fowler when he received his own conveyance from
Samuel T. ·Fowler; that no sufficient reason is shown
for complainant's delay in filing this bill; that the
facts alleged do not show that Crawford was in pos-
session of the minerals between the years 1882 and
1900, and that the cause of. action is barred by the
statute of ten years.  ·

GOODHUE & BRINDLEY, for appellant.

HOOD & MURPHREE, for appellee.

SOMERVILLE, J.—On a former appeal in this case it was held that the facts recited in the bill show that the respondent, Samuel O. Fowler, became, by virtue of the deed executed to him, a trustee ex maleficio for the grantees of Samuel T. Fowler, including the complainant.—*Fowler v. Ala. I. & S. Co.*, 164 Ala. 414, 51 South. 393. But it was also further held that, as the bill was filed more than 20 years after the initiation of the trust, the complainant was bound to affirmatively show a sufficient excuse for his long delay in the enforcement of his rights.

The amendment is designed to supply the omission pointed out in the opinion of Justice Sayre on the former appeal, and the only question now presented is whether a sufficient excuse for the delay is exhibited by the amended bill.

The excuses sought to be presented are (1) complainant's ignorance of the state of the legal title and (2) possession by complainant or its predecessors in interest.

1. Under the principles declared on the former appeal, the laches imputable to this complainant would have been initiated by notice to any one of its antecedent privies in estate that the legal title to the mineral interest was wrongfully vested in any person other than Samuel T. Fowler. The amended bill shows that Crawford, Elliott, and the complainant had no knowledge of respondents ever claiming ownership of the mineral interest, nor of the deed from Arnold to Samuel O. Fowler, until the year 1903. It is silent, however, as to such knowledge on the part of Beers, and hence is insufficient in this aspect. Appellee argues certain circumstances as indicative of

[Fowler v. Alabama Iron & Steel Company.]

Beers' want of knowledge, but this argument, predicated upon an appropriate averment in the bill, must be addressed to the trial court. Moreover, since complainant is compelled to rely upon the deed from Arnold to Samuel O. Fowler as the foundation for its now asserted title, it follows that complainant, as well as its intervening predecessors in estate, are chargeable with notice of the fact that the Arnold deed named Samuel O. Fowler as grantee.—*Johnson v. Thweatt,* 18 Ala. 741, 747. In that case it was said: "A purchaser has the right to call for and examine the chain of title to the land he is about to purchase; and if he neglects to do this and purchases without seeing the deeds, through which he is to receive title, it is his own folly; in the language of the authorities, it is *crassa negligentia,* and he cannot protect himself from the consequences of notice, by insisting upon his own folly, or neglect."

This doctrine has been often reaffirmed: *Edwards v. Bender,* 121 Ala. 77, 25 South. 1010; *Austin v. Willis,* 90 Ala. 421, 8 South. 95; *Shorter v. Frazer,* 64 Ala. 74; *Marks v. Cowles,* 61 Ala. 299, 307.

We do not mean to now hold that this constructive notice to complainant that the grantee in the Arnold deed was described as Samuel O. Fowler conclusively shows knowledge that the title was then in the four year old son of Samuel T. Fowler, and not in Samuel T. himself, but only that it was sufficient, prima facie, to suggest reasonable inquiry in that direction.

2. In the face of the knowledge thus imputed to complainant, or its predecessors in estate, it is necessary for the bill to show such possession of the property since the initiation of the trust in 1882 as would excuse complainant's long inaction with respect to the

judicial enforcement of its rights, its first step in that behalf occurring in June, 1903.

So far as the period between 1882 and 1900 is concerned, the allegations of the amended bill do not show such acts of ownership and possession as to establish possession in Crawford as a conclusion of law. In the absence of such a showing the bill should allege *possession* in Crawford, and it will then be a question of fact whether the alleged possession is supported by acts sufficient in number and sequence, and appropriate to the nature and condition of the property, and undeveloped mineral interest. Otherwise the inexcused delay of 18 years must be held as fatal to the maintenance of the bill.

The decree of the chancery court was erroneous; and, reversing that decree, one will be here rendered sustaining the demurrer to the amended bill.

Reversed, rendered, and remanded.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.

### ON REHEARING.

SOMERVILLE, J.—We do not think that our ruling that the bill of complaint must allege possession in the complainant and his predecessors in interest is at all inconsistent with anything that was ruled or said in *Fowler v. Ala. I. & S. Co.*, 164 Ala. 414, 51 South. 393, or in *Woodlawn R. & D. Co. v. Hawkins*, 186 Ala. 234, 65 South. 183. In the first-named case the rebuttal of laches was grounded upon complainant's *possession,* and it was suggested that, in the absence of actual possession—that is, a possessio pedis—general acts of ownership would doubtless be sufficient; in other words, the lands, being wild and unoccupied, and com-

plainant's estate being only undeveloped minerals, possession might be sufficiently shown for the purpose in hand by proof of such general acts of ownership as usual and feasible for such an estate in such lands. In the Hawkins Case the record shows that the bill of complaint alleged complainant's *possession* generally as well as particular acts of ownership. So the question here ruled upon was not there presented. On this branch of the case we adhere to our original conclusion.

On the other branch of the case, however, after a prolonged consideration of the very peculiar facts shown by the bill of complaint, we are now constrained to a different conclusion, for reasons which we will now undertake to state. The bill shows that actual deceit was practiced by Samuel T. Fowler upon his principal, Beers, for whom he bought the land, and that this deceit resulted in a flagrant fraud upon Beers and Crawford—*actual fraud* as distinguished from fraud which is *constructive* only. Employed as a trusted agent to buy the land and deliver it over to his principal, whose money he used to pay for it, he procured a conveyance of the title to his infant son, Samuel O. Fowler, then three or four years of age. This occurred on June 17, 1882. On June 28, 1882, Samuel T. Fowler, pursuant to his obligation in the premises, conveyed the mineral interests in certain lands, including the tract in suit, to his principal Beers, with the recital that it was "the mineral right to the land *conveyed by S. W. Arnold to Samuel T. Fowler, June 17, 1882.*" It must be noted, also, that in correlation with this false statement, the deed made to Samuel O. Fowler was kept off the record for 18 years, being finally recorded on June 4, 1900—by sinister design or strange co-incidence the very day on

which Crawford, the grantee of Beers, conveyed to Elliott, the grantor of complainant. On the former appeal in this case it was held "that the deed procured by Fowler to his infant son would be considered as to Crawford and his successors in interest, as the confederated breaking up and repudiation of the trust reposed in the former, with the result that the son became by construction of law a trustee for the complainant, a trustee ex maleficio." It follows, as declared of a similar situation by the Supreme Court of the United State in *McIntire v. Pryor*, 173 U. S. 38, 52, 19 Sup. Ct. 352, 43 L. Ed. 606, that Samuel O. Fowler is as fully chargeable with the fraud and deceits practiced upon Beers and his successors in title as if Samuel O. had committed them personally.

In the fraudulent procurement of the deed to Samuel O., Samuel T. was his agent; and when Samuel T., ostensibly discharging his trust, falsely represented to his grantee, Beers, by the solemn recital of his deed, that this land had just been conveyed to himself by the owner, Arnold, it was as much the declaration of Samuel O. as if the latter were sui juris and dealing personally with Beers. The sequel now stands revealed. Samuel O. Fowler, by reason of the false statement made to Beers, and equally to every one of his successors in title, cannot now be heard to say that any one of them had *constructive* notice of the actual state of the title; for this false statement absolved Beers and his successors from the usually recognized duty of examining antecedent links in their chain of title, and invited and authorized their belief in its integrity. And, in the absence of affirmative proof to the contrary, a court of equity and conscience must and will presume that they accepted the statement as true, and that their delay in the prosecution of their

rights was the result of that deception.—See *Batson v. Alex. City Bank,* 179 Ala. 480, 60 South. 313 (13).

And we are clearly of the opinion that such a delay, the result of the respondent's affirmative fraud and concealment, there being no adverse possession of the mineral interest by respondent, prima facie never ripened into laches, no matter how long continued. *McIntire v. Pryor,* 173 U. S. 38, 54, 19 Sup. Ct. 352, 43 L. Ed. 606; *Michoud v. Girod,* 4 How. 503, 11 L. Ed. 1076; 16 Cyc. 169, 170. The doctrine of laches is a shield and ought never to become a sword, and, though it is applied in harmony with well-established general principles, precedents are not allowed to control particular cases, but each case is considered and determined upon its own peculiar facts. We are convinced that equity ought not to sanction its application here unless complainant's predecessors can be charged with actual knowledge or its equivalent. The result of these considerations is that on the facts shown by the bill of complainant, it is not incumbent upon complainant to allege a want of knowledge or notice on the part of itself or its antecedent privies in title, and that, if any of them ever had such knowledge or notice, the burden is upon respondent to plead and prove it, so far as the imputation of laches is concerned.

It is, of course, to be observed that we are dealing here with the parties and privies to the original fraud, and not with an innocent purchaser from Samuel O. Fowler.

The bill of complaint as a whole must therefore be pronounced sufficient as against the demurrers, all of which are addressed to the entire bill; and, there being no ground of demurrer addressed to that part of the bill which sets up possession in complainant and its

predecessors in title, all the grounds of demurrer were properly overruled.

We deem it proper to say that on the original hearing of the case the full bearing and significance of the false recital in the deed of Samuel T. Fowler to Beers was not brought to our attention, and its consideration was obscured by the prominence given to other aspects and theories of the case.

The application for rehearing will be granted, the former judgment of reversal will be set aside, and a judgment will now be entered affirming the decree of the chancery court.