# Hartley, *et al. v.* Frederick.

## *Bill to Cancel Deed.*

(Decided February 11, 1915.   67 South. 983.)

1. *Cancellation of Instrument; Fraud; Sufficiency of Judgment.*— A bill alleging that complainant was the sole heir at law of one who died owning a house and lot devised to her by the father of respondent, as well as personal property; that respondent became the administrator of the estate; that a deed from complainant to respondent to all of the property of every description owned by D. was induced by respondent's representations that it was for the purpose only of transferring the house and lot, and that such house and lot had been deeded to respondent by his father, and did not belong to D; that such house and lot, had not, in fact, been conveyed to respondent, and further alleging a lifelong and intimate family relation and association between complainant and respondent, and that she was reared in the same house with respondent, and loved and trusted him, that when she executed the deed she was fifty-six years old, in poor health, and weak in both judgment and will power, that she was naturally impressionable and sentimental, and that respondent was fifty-two years old, vigorous, mentally and physically, and a successful man of affairs, alleged every element of fraud and deceit to entitle complainant to have such deed set aside.

2. *Deeds; Fraud; Estoppel; Negligence.*—Where the respondent induced complainant to execute a deed to him by his misrepresentations that he was the owner of the real estate by virtue of a deed from a former owner, and that the records, would verify his statement, the failure of complainant to investigate the state of the title for herself did not defeat her right to have the deed set aside, for where a fact represented is one peculiarly within the knowledge of the party making the representation, and of which the other party is ignorant, although the real facts appear on the public record, there is no obligation to examine the records, and the failure to do so does not affect the right of action, especially as the tendency of modern decisions is to relax the requirement of diligence, and to hold that a party guilty of intentional deceit cannot be heard to say that the other party ought not to have relied thereon.

3. *Cancellation of Instruments; Conditions Precedent; Restoral of Consideration.*—Where money paid complainant by the administrator of an estate in which she was interested at the time of the execution of a deed to him, in reliance on his misrepresentation that he had title thereto by a deed from a former owner, was received by complainant as an advancement representing the value of certain debts due to such estate, complainant was under no boligation to return such money as a condition precedent to having the deed rescinded.

4. *Same.*—Even if such money had been received as a consideration by her, it was sufficient for complainant to offer to account for the money or be charged therewith, in a bill to set aside such deed.

5. *Same; Necessary Parties.*—One of the grantees in a deed which the grantor was induced to execute by the fraudulent misrepresentations of another grantee, was a necessary party to a bill to annul the deed.

6. *Deeds; Fraud of One Grantee; Effect as to Others.*—Although one of the grantees in a deed did not participate in the fraudulent misrepresentation of a co-grantee, he was equally responsible and answerable therefor so long as he remained a grantee and beneficiary under the fraudulent deed.

APPEAL from Montgomery Chancery Court.

Heard before Hon. W. R. CHAPMAN.

Bill by Mrs. Emma Frederick against J. H. Hartley and others to cancel and annul a deed of conveyance executed by complainant to respondents, and for an accounting. From a decree sustaining demurrers as to the allegation of undue influence, but overruling them on other grounds, respondents appeal. Affirmed.

As last amended, the bill alleges that complainant was and is the sole heir at law of her niece, Fanny Dearing, who died in the city of Montgomery about July 23, 1911, leaving city real estate worth about $7,000, and personal estate worth about $6,000; that J. H. Hartley became administrator of said estate, and, as such, came into possession of all the personal property. The deed in question was dated August 17, 1911, and conveyed to J. H. and T. H. Hartley, respondents herein, all the property of every description owned by Fanny E. Darling at the time of her death, specifying in particular a house and lot in the city of Montgomery (the only real estate); two mortgage securities aggregating $4,000; all furniture, diamonds, bric-a-brac, moneys due, and choses in action. The bill alleges that complainant executed the deed upon the representations made to her by the respondent J. H. Hartley that it was for the purpose only of transferring to him the house property in Montgomery, and that she signed it in reliance upon his representations as to its contents,

not knowing that it purported to transfer anything
else, and that she received from J. H. Hartley only
$4,000, which was paid to her the next day, not as a
consideration for the deed, but as an advancement to
her on the mortgage debts which were not due until
the year 1914. The inducements which led plaintiff to
the voluntary relinquishment of the house property are
thus stated:

(6) * * * That orator said she also loved the
old home place, and that her niece, the said Fanny Dear-
ing, had said that at her death it would belong to ora-
trix; that the said J. H. Hartley said, "No;" the place
had been deeded to him by his father; that it was his
by law, and that Mrs. Dearing had no right to leave it
to oratrix; that the said J. H. Hartley, after much other
general conversation in reference to family matters,
suggested that he wanted oratrix to sign a transfer of
the house to him; that Mr. Frederick, husband of ora-
trix, who was present, asked him why it was necessary
for oratrix to make a transfer if the house already be-
longed to him. He replied, in substance, that it would
prevent any dispute or misunderstanding about the
title of the property, and it would save him the trou-
ble and expense of proving in court that he owned it,
and that oratrix, by making the transfer, would satisfy
her own mind, and save herself the useless trouble and
expense of trying to get the property; that he repeated
that the property was his, and that it was better that
she give him a transfer of it; that she could always look
to him to help her if she needed help, as if he was her
brother; * * * he spoke of the affection he had for
oratrix and his willingness to help her, of the proper-
ty being his by law which he could prove, and the use-
lessness and expense and trouble of oratrix attempting
to get the property, and of it being wrong for her to

12—191

[Hartley, et al. v. Frederick.]

do so in view of their long years of friendship and their close family connections (other misrepresentations are here charged as to the amount and existence of personal property); that oratrix thereupon agreed to comply with his wishes and make a transfer to him of said house.

The bill alleges that several years later her suspicions were aroused by the unsatisfactory conduct of said Hartley with respect to certain personal property she expected to receive, whereupon she came to Montgomery from her home in another state, and, upon consulting an attorney, learned for the first time of the character of the deed she had executed, and that J. H. Hartley had not, in fact, conveyed the house property to J. H. Hartley, Jr., but had died owning it, and that it had passed by his will to Frances E. Dearing, and that said respondent's statement to complainant was false. The bill further alleges a lifelong and intimate family association between oratrix and respondents; that she was reared in the same house with them, and loved and trusted them as brothers; that when she executed the deed in question she was 56 years old, and enfeebled of long-standing ill health, and was weak in both judgment and will power; that she was naturally impressionable and sentimental, and that J. H. Hartley was 52 years of age, vigorous, mentally and physically, and a successful man of affairs. The bill shows an offer by complainant to return the amount received by her, and a submission to the jurisdiction of the court in all respects. The chancellor held the bill sufficient in its allegation of fraudulent misrepresentation and complainant's reliance thereon, but that it was demurrable as showing undue influence as an independent ground of relief.

[Hartley, et al. v. Frederick.]

STEINER, CRUM & WEIL, for appellants.

HILL, HILL, WHITING & STERN, for appellee.

SOMERVILLE, J.—(1) The bill of complaint alleges with clearness and precision every element of fraud and deceit which is necessary to entitle the complainant to the relief prayed for.

(2) The demurrant insists, however, that, on the facts shown by the bill, the complainant had no right to accept as true the claim of the respondent J. H. Hartley that he was the owner of the real estate in question by virtue of a deed made to him by his father; that complainant's intestate had no right to leave it to the complainant; and that the records would verify his statements; in short, that the complainant should have investigated the state of the title for herself, and, failing to do so, cannot complain that she was deceived.

In support of this contention the demurrant cites the following: "It is a general principle, however, that if no confidential relations exist between the parties, and if the facts misrepresented or concealed are not peculiarly within the knowledge of the party charged, and the other party has available means of knowing the truth by the exercise of ordinary prudence and intelligence, and nothing is said or done to prevent inquiry by him, he must make use of his means of knowledge or he cannot complain that he was misled."—20 Cyc. 32, b.

But the same authority states in the same paragraph that: "The respective character, intelligence, experience, age, and mental and physical condition of the parties are considerations which may vary this rule or render it of small importance."

[Hartley, et al. v. Frederick.]

And further: "On the other hand, if the fact represented is one which is susceptible of accurate knowledge, and the speaker is or may well be presumed to be cognizant thereof, while the other party is ignorant, and the statement is a positive assertion containing nothing so improbable or unreasonable as to put the other party upon further inquiry or give him cause to suspect that it is false, and an investigation would be necessary for him to discover the truth, the statement may be relied on."

So also the rule requiring investigation does not apply "if any relation of trust or confidence exists between the parties, so that one of them places peculiar reliance in the trustworthiness of the other."—20 Cyc. 34 (III).

Specifically, as to the availability of public records to show the true title, the authorities hold without conflict that: "Where the fact represented is one peculiarly within the vendor's knowledge, and of which the person is ignorant, * * * although the real facts appear on the public records, the purchaser is under no obligation to examine the records, and his failure to do so does not affect his right of action."—20 Cyc. 57 (2), and cases cited.

With respect to a vendee, as the same authority points out, the tendency of the modern decisions is to relax the requirement of diligence, and to hold that a vendor guilty of intentional deceit should not be heard to say that the purchaser ought not to have believed him.—20 Cyc. 62 (D). We thoroughly approve of this tendency, and it is as applicable to vendors as to vendees. Indeed, it would seem to be a singular perversion of morals as well as of policy for a court to punish the venial faults of negligence and credulity by confirming a successful deceiver in the enjoyment of the

fruits of his fraud. We have heretofore expressed our views somewhat forcibly upon this subject, and need not now repeat them.—*King v. Livingston Mfg. Co.,* 180 Ala., 118, 60 South. 143.

From whatever angle this case is viewed, the allegations of fraud and deceit are sufficient.

(3, 4) If it be true, as alleged, that the $4,000 paid to the complainant was received by her from the administrator as an advancement representing the value of the mortgage debts due the estate, she was under no obligation to return that amount to him as a condition to the rescission of her deed. And, even if it were received as a consideration for the deed, it is sufficient, under the circumstances shown, to offer to account for it or to be charged with it as may be equitable. There can be no practical difficulty in this regard.

(5, 6) T. H. Hartley, being a party to and beneficiary under the deed, is obviously a necessary party to the bill of complaint. And, although he does not appear to have actually participated in the fraudulent misrepresentations imputed to his corespondent, yet both in law and in equity he is equally responsible and answerable therefor so long as he stands as a grantee and beneficiary under the fraudulent deed.—*Fowler v. Ala., I. & S. Co.,* 189 Ala. 31, 66 South. 672.

Upon these considerations, the decree of the chancellor overruling the demurrer will be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.