(110 So. 286)

**WILLIAMS et al. v. BEDENBAUGH.**
(6 Div. 722.)

(Supreme Court of Alabama.   Nov. 4, 1926.)

**1. Fraud ⊜41.**

Count alleging misrepresentations by stockholder and officer, inducing purchase of stock resulting in total loss, *held* to present case of actionable fraud.

**2. Fraud ⊜13(2).**

Under Code 1923, § 8049, knowledge by stockholders and officers of corporation of falsity of representations of material facts to induce purchase of stock is not essential to liability.

**3. Fraud ⊜11(2).**

Representations by stockholders, inducing purchase of stock, relative to corporation's solvency and dividends, *held* representations of fact, and not mere opinions.

**4. Fraud ⊜41.**

Materiality of misrepresentations by stockholders, inducing purchase of stock, relating to corporation's solvency and dividends being manifest, they need not be specially averred.

**5. Principal and agent ⊜189(1).**

Showing of principal's liability in tort, for doings of agent, acting within scope of his employment, may appear by express averment or by averments of fact showing relation.

**6. Corporations ⊜408.**

Corporate officers selling stock with power of sales agents may bind corporation for fraud in promotion of sales.

**7. Fraud ⊜30.**

Officers selling stock for corporation are not liable for independent fraud of others, in absence of express or implied power authorizing one to speak for other.

**8. Fraud ⊜41.**

Averment, in count for damages for fraud in sale of stock, that representations and acts of corporate officer were done for himself, and as agent of others, *held* defective in failing to show authority to bind others.

<hr/>

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**9. Fraud ☜30.**

Allegation that corporate officers knowingly ratified fraud of other officer in misrepresenting stock, to secure sale, *held* sufficient to create common liability.

**10. Fraud ☜30.**

One who joins in consummation of transaction, known to have been negotiated by fraud, becomes party to fraud.

**11. Fraud ☜41.**

Where liability for fraud is based on alternate grounds, each must be good.

**12. Fraud ☜41.**

Count against stockholders and officers, for damages for fraud in sale of stock, *held* not demurrable for failure to aver defendants were acting, within scope of employment, as agents of corporation.

**13. Fraud ☜41.**

Count alleging that officers and stockholders of corporation, knowing it was insolvent, fraudulently represented it as solvent to induce purchase of stock, *held* good, under Code 1923, vol. 4, p. 507, form 21, as count for deceit.

**14. Fraud ☜41.**

Averment, in action for damages for fraud in sale of corporate stock, that defendants guaranteed fixed dividends may be treated as surplusage.

**15. Fraud ☜41.**

Under Code 1923, § 5677, count alleging misrepresentations by officers as to solvency of corporation, and purchase of stock in reliance thereon, *held* good as showing fraud and deceit.

**16. Fraud ☜41—Count alleging, generally, that information of corporation's insolvency was withheld with intent to defraud purchaser of stock held demurrable as not showing facts as to duty (Code 1923, § 8050).**

Under Code 1923, § 8050, count, in suit for damages for fraud in sale of stock, alleging, generally, that information as to corporation's insolvency was withheld with intent to defraud, *held* demurrable as not showing facts from which duty to divulge information would arise.

**17. Fraud ☜41.**

To make case of fraudulent concealment by silence, facts should be averred from which duty to speak arises.

**18. Fraud ☜17.**

If one applying to business advisers for investment is advised to invest in stock of their own company, failing condition of which is concealed, case of fraud appears.

**19. Fraud ☜34.**

In suit against officers and stockholders of corporation for damages for fraud in sale of stock, stock need not be surrendered or other offer made to put corporation in statu quo.

**20. Limitation of actions ☜192(3).**

Replication to defense of statute of limitations, in suit for damages for fraud in sale of stock, alleging suit was brought within year of discovery of fraud, *held* demurrable in view of Code 1923, § 8966, for failure to show how and when facts constituting fraud became known.

**21. Pleading ☜63.**

Usually cause of action or defense may be set up in language of statute creating it.

**22. Limitation of actions ☜100(11).**

Facts constituting fraud are deemed discovered when they ought to have been, in determining whether action therefor is barred by limitations.

**23. Limitation of actions 100(11).**

Person, having been misled by wrong of another, is not required to presume fraud or suspect it as barring his right to recover therefor, until something comes to him leading a just person to suspect and make inquiry.

**24. Limitation of actions ☜100(11).**

Lapse of four months from time of purchase of stock, alleged to have been induced by fraudulent representations, *held* not per se an unreasonable time for discovery of fraud so as to bar action for damages.

**25. Fraud ☜20.**

In suit for damages for fraud in sale of stock, evidence that counsel warned plaintiff's representative that she was making a bad investment presents no defense.

**26. Fraud ☜20.**

That attorney for plaintiff's representative, in purchase of corporate stock, expressed opinion that it was bad investment would be no defense to action for fraud in inducing purchase.

**27. Fraud ☜23.**

Record of mortgage by corporation *held* not notice of financial condition to one purchasing stock in reliance on misrepresentations by officers.

**28. Fraud ☜23.**

Recording affords no actual notice defeating rights of persons who deal on representations of fact.

**29. Fraud ☜36—Acceptance of note for money invested in corporate stock without agreement of release, presents no defense to action for fraud inducing purchase.**

Acceptance of note of corporation after its failure for money invested in stock, in reliance on alleged misrepresentations by officers, without agreement of release, *held* no defense to subsequent action against officers for fraud in inducing purchase.

**30. Fraud ☜52.**

Representations made to plaintiff's mother, as her agent, in purchasing corporate stock, who also purchased stock for herself, *held* competent, under proper pleading, in suit for damages for fraud in inducing sale.

**31. Fraud ☜41.**

Complaint for fraud in inducing purchase of stock should show by whom and to whom representations were made and causal connection between wrong and injury.

#### 32. Evidence ⬅211.

Answers to interrogatories filed in another case are competent evidence, in nature of admissions, in suit against corporate officers for fraud in inducing sale of stock.

#### 33. Fraud ⬅52.

Under evidence showing continuing agency of plaintiff's mother to whom misrepresentations, in inducing purchase of stock, were made, evidence of acts, omissions, and declarations of parties, after sale of assets, *held* competent.

#### 34. Evidence ⬅269(1).

Evidence of declared purpose by corporate officers and stockholders to refund money used in purchase of stock *held* admissible, in suit for fraud in inducing purchase.

#### 35. Fraud ⬅52.

In suit for fraud inducing purchase of stock, wide range was properly given in developing condition of corporation, defendants' connection therewith, and knowledge of conditions.

Appeal from Circuit Court, Walker County; Ernest Lacy, Judge.

Suit by Augusta Riddlesperger Bedenbaugh against V. H. Williams, R. M. Ellis, and A. S. Preston. From a judgment for plaintiff, defendants Williams and Ellis appeal. Transferred from Court of Appeals, under Code 1923, § 7326. Reversed and remanded.

Chas. R. Wiggins and Curtis, Pennington & Pou, all of Jasper, for appellants.

The complaint fails to show that Williams was acting within the line and scope of his authority for Ellis, and that Williams and Ellis were acting within the scope of their authority as agents for the corporation. Hanover Fire Ins. Co. v. Wood, 209 Ala. 380, 96 So. 250; Mobile Terminal & R. Co. v. Gladwell, 7 Ala. App. 374, 62 So. 259; Evans Bros. Const. Co. v. Steiner Bros., 208 Ala. 306, 94 So. 361; Davidson v. Smith, 16 Ala. App. 473, 79 So. 147; Childress v. Miller, 4 Ala. 447. In order that the suppression of a truth may constitute fraud, there must be a suppression of facts which one party is under legal or equitable obligation to communicate to the other. Juzan v. Toulmin, 9 Ala. 662, 44 Am. Dec. 448; Griel v. Lomax, 89 Ala. 420, 6 So. 741; Nat. Park Bank v. L. & N. R. Co., 199 Ala. 192, 74 So. 69. Ignorance on the part of the alleged defrauded party is not sufficient to prevent the running of the statute of limitations. Peters Mineral Land Co. v. Hooper, 208 Ala. 324, 94 So. 606. Plaintiff having accepted and retained the note of the corporation in satisfaction of her claim, defendants were entitled to the affirmative charge. Central of Georgia R. Co. v. Gross, 192 Ala. 354, 68 So. 291. Means of knowledge is the equivalent of knowledge. Veitch v. Woodward Iron Co., 200 Ala. 358, 76 So. 124; Carroll Mercantile Co. v. Harrell, 199 Ala. 87, 74 So. 252; Gamble v. Black Warrior Coal Co., 172 Ala. 669, 55 So. 190; Cole v. Birmingham Union Ry. Co., 143 Ala. 427, 39 So. 403; First Nat. Bank of Brockton v. McIntosh, 201 Ala. 649, 79 So. 121, L. R. A. 1918F, 353. Fraud is never presumed; it must be clearly proved. Federal Land Bank of New Orleans v. Branscomb, 213 Ala. 567, 105 So. 585.

Gray & Powell, of Jasper, for appellee.

Brief of counsel did not reach the Reporter.

BOULDIN, J. This is a suit at law, brought against individual stockholders and officers of a corporation, to recover damages for fraud in the sale of stock to the plaintiff for the use of the corporation.

[1] Amended count 2 relies upon misrepresentations of defendant Williams. That said defendant represented the corporation to be in every respect solvent, owning assets greatly in excess of its liabilities, and making large dividends on its capital stock, when the corporation was, in fact, at the time, insolvent and in a failing condition, and plaintiff was induced by such representations to purchase capital stock of the corporation, resulting in a total loss to her, presents a case of actionable fraud against defendant Williams.

[2-4] The representations are of facts, not mere opinions; their materiality is manifest and need not be specially averred; that plaintiff was thereby induced to purchase sufficiently shows reliance upon them; knowledge of their falsity and representations made recklessly, without knowledge, is not essential to liability in such case. Code 1923, § 8049; Harton v. Belcher, 195 Ala. 186, 70 So. 141; Southern States F., etc., Co. v. Wilmer Stores Co., 180 Ala. 1, 60 So. 98; Manning v. Carter, 201 Ala. 218, 77 So. 744; Stone v. Walker, 201 Ala. 130, 77 So. 554, L. R. A. 1918C, 839.

To fasten liability on defendants Ellis and Preston, this count avers, in effect, that Williams, Ellis, and Preston, were owners of all the stock theretofore issued in the Walker-Buick Company, the corporation, were acting as representatives or agents of the corporation in making the sale of the stock to plaintiff, and were interested in the sale to protect their own investments; and that the representations made by Williams were "for himself and, as agent," for the other defendants, or were ratified by them in that, with full knowledge of the representations and their falsity, they accepted the money and issued the stock.

[5] To be liable, in tort, for the doings of an agent, it must appear the agent was acting within the line and scope of his employment. This may appear by express averment or by averments of fact showing a relation of agency, its scope, and the act complained of as within such scope.

[6, 7] Officers of a corporation engaged in selling stock for the corporation, with the powers of sales agents, may bind the corporation for fraud in the promotion of sales. But the mere fact that the several officers are agents of the corporation in making sales and they have common interests as stockholders in the corporation does not render each the agent of the other, in such sense as to render one liable for the independent fraud of the other. There must exist, between them, some express or implied power in one to speak for the other, in making representations. This may arise by the relation of partnership or other form of joint enterprise, wherein each represents the other, but it does not arise merely by being common agents of another person, although each has a similar interest or receives a like benefit from representing the common principal.

[8] The alternative averment that Williams' representations and acts "were done for himself and as agent of the other defendants" is defective in failing to show his authority to bind them, as above indicated. Hanover Fire Insurance Co. v. Wood, 209 Ala. 380, 96 So. 250; Evans Bros. v. Steiner Bros., 208 Ala. 306, 94 So. 361; Childress v. Miller, 4 Ala. 447; May v. Kelly, 27 Ala. 497.

[9-11] The second alternative, ratification of the fraud with knowledge thereof, is sufficient. He who joins in the consummation of a transaction, known to have been negotiated by fraud, becomes a party to the fraud. Where liability is based upon alternate grounds, each must be good.

[12] We are impelled to hold count 2, as amended, subject to the demurrers interposed by defendants Ellis and Preston. The suit is not against the corporation; no question of respondeat superior as to the corporation is involved. Hence count 2 was not demurrable for the want of averment that defendants were acting within the line and scope of their employment, as agents of the corporation. Moreover, the count shows the defendants had the controlling power in the corporation and the consummation of the sale, by issuance of the stock.

[13] Count C charges that the defendants, managing officers and chief stockholders of the corporation, knowing it was insolvent, or fast becoming insolvent, fraudulently represented it to be, in every respect, solvent, the owner of assets greatly in excess of liabilities, and making large dividends on its capital stock, and plaintiff was thereby induced to invest $600 in worthless stock, etc. This is a good count for fraud by misrepresentations. See authorities above. Under our statutory forms, it is a good count for deceit. Code of 1923, vol. 4, p. 507, form 21.

[14, 15] The averment that the defendants guaranteed a fixed dividend on the stock may be treated as surplusage, in the action of tort. Count E reads:

"The plaintiff claims of the defendants $600 damages, for that on the 8th day of January, 1923, the defendants represented to the plaintiff that the Walker-Buick Company, a corporation, was solvent and in good credit, and worth many thousand dollars over its liabilities.

"That the plaintiff, not knowing such representations were false, was thereby induced to invest the sum of $600 in the capital stock of said corporation.

"That said representations were false and were known by the defendants, at the time they made them, to be false, and were made with the intent to deceive and defraud the plaintiff.

"That the said corporation was insolvent, and the plaintiff wholly lost the amount of money invested in such stock."

This meets all the requirements of the most exacting rules of pleading in actions of fraud and deceit. Code of 1923, § 5677.

[16] Count G is based upon alleged fraudulent concealment. It shows no confidential relations between the parties, no misrepresentations, nor partial statements tending to silence inquiry, and no knowledge on the part of the defendants that the plaintiff was uninformed as to the condition of the corporation. The fraud relied upon is merely that the defendants knew the corporation was fast becoming insolvent and withheld such information from the plaintiff, who did not know it. For all that appears in this count, the parties may have been dealing at arms' length, the plaintiff acting, so far as defendants knew, on her own chosen source of information, neither looking to nor desiring information from them.

[17, 18] To make a case of fraudulent concealment by silence, facts should be averred from which the duty to speak arises. The general averment that the information was withheld with intent to defraud, and that the defendants knew the plaintiff would lose her money, does not meet this requirement. True, as evidence tended to show, if the plaintiff applied to the defendants, as business advisers, for assistance in finding a safe and profitable investment for her money, and, assuming the rôle of friends, they directed and advised her to invest in the stock of their own company, known to be in a failing condition, concealing that fact from her, and, not knowing the facts, she invested on such advice, a case of fraud appears. But this is not the tenor nor effect of Count G. The demurrer thereto should have been sustained. Code of 1923, § 8050; National Park Bank v. L. & N. R. Co., 199 Ala. 193, 74 So. 69; Griel v. Lomax, 89 Ala. 420, 6 So. 741; Jordan v. Pickett, 78 Ala. 331; Moses v. Katzenberger & Sons, 84 Ala. 95, 4 So. 237.

[19] This is not a suit for rescission, nor dependent on rescission, as a condition precedent. It does not deal with the liability of the corporation. The claim is to recover damages resulting from the fraud of individuals, acting on behalf of the corporation. There

was no need to offer to surrender the stock, or otherwise put the corporation in statu quo. The measure of damages is the loss resulting from the fraud alleged.

[20] The date of the cause of action, as laid in the complaint, was on or about January 8, 1923. Suit was begun May 2, 1924. Defendants pleaded the statute of limitations of one year. To this, the plaintiff filed special replication No. 3, alleging:

"This suit was brought within one year from the time the plaintiff discovered the fraud and wrongs complained of in her complaint."

[21] Defendants demurred to this replication. The replication is, substantially, in the language of the statute, Code of 1923, § 8966. Under our liberal rules of pleading, it is usually sufficient to set up a cause of action or defense in the language of the statute creating the same. But the origin and purpose of the exception to the running of the statute of limitations, in cases seeking relief on the ground of fraud, has led to the application of different rules. In Gordon v. Ross, 63 Ala. 363, 367, a suit in equity, it was said:

"A party, availing himself of this statute, would be required to aver, with precision, the facts and circumstances constituting the fraud —how and when these facts were discovered, what prevented a discovery before the bar of the statute was complete—and to acquit himself of all knowledge of facts which ought to have put him on inquiry."

In Henry v. Allen, 93 Ala. 197, 9 So. 579, an action at law based upon misrepresentation, a replication to the effect that the falsity of the representation was not learned or discovered until a named date was held a sufficient answer to the plea of the statute of limitations. The report does not disclose whether the replication was tested by demurrer.

In Maxwell v. Lauderdale, 200 Ala. 648, 77 So. 22, a case at law based on fraud in pointing out land lines, it was said:

"In a way, plaintiffs had alleged fraud in their complaint, but, after the statute of limitations had been pleaded, they should have shown by replication how and when the facts constituting the alleged fraud were discovered."

Many cases, usually in equity, where there has been a great lapse of time, such unexplained acquiescence as tends to impute laches under the facts of the case, or to bring forward stale demands, a strict rule is applied in the matter of excusing the delay for want of knowledge of the right action. This, in keeping with the general doctrine in equity, requiring good faith and reasonable diligence that there be an end of controversy, while the facts are yet known and obtainable. The statute of limitations is founded on a like policy.

[22, 23] Broadly speaking, the facts constituting the fraud are to be considered as discovered when they ought to be discovered, when such facts come to knowledge as provoke inquiry in a person of ordinary prudence, and which, if followed up, would lead to the discovery of the fraud. But this rule is not to be so applied as to defeat the ends of the statute. Fraud, in the nature of it, implies that the party has been misled and that, by the wrong of another, he is accepting and resting in a false sense of security. A party thus situated is not required to presume fraud or suspect it, until something comes to him leading a just person to suspect and make inquiry.

[24] Dealing with the case before us, only a period of some four months' elapsed from the time of the purchase of the stock until the twelve months' period provided by the saving clause of the statute began. This is not per se an unreasonable time for the discovery of the fraud or such time as calls for explanation of long acquiescence and delay. In such case, we think the rule stated in Maxwell v. Lauderdale, supra, quite strict enough; viz., the replication should show how and when the facts constituting the fraud became known, with a general denial of the knowledge of such facts theretofore. This much should appear to properly advise the defendant of the true issue in that regard, and to comply with the general rule requiring facts to be set up in dealing with questions of fraud. The general averment of replication 3, to the effect that the facts constituting the fraud were not "discovered" until within twelve months before suit was brought, does not meet the rule stated. It was subject to demurrer. The evidence made a clear case for the jury, both on the question of misrepresentations inducing the purchase of the stock as alleged in the complaint, and upon the discovery of the facts within twelve months before suit brought.

[25] That counsel warned plaintiff's representative that she was making a bad investment, at the time, presents no defense. If she, nevertheless, chose to trust and did trust the defendants as her friends and as having better knowledge of the condition of their company, it is not for them to say:

"You should not have believed our report."

[26] That the attorney for plaintiff's representative expressed the same opinion after the purchase of the stock, if he did, would not change the matter as one for the jury's solution. Having decided to rely on the defendant's assurance that the attorney was in error; receiving in regular course the payment of a 1 per cent. monthly dividend as promised, and knowing nothing of the state of the business until suddenly advised the assets of the concern were sold for the payment of its debts, and that without notice to her as a stockholder, the defendants are not in a position to say plaintiff should have taken the ad-

vice of her attorney. Hartley v. Frederick, 191 Ala. 175, 67 So. 983; King v. Livingston Mfg. Co., 180 Ala. 118, 60 So. 143.

[27, 28] The record of a mortgage to secure a large issue of bonds, if bearing on its face evidence of the bad financial condition of the company, was not notice to the plaintiff at the time of her purchase, nor thereafter as affecting her rights in this action. Registration statutes provide constructive notice to third persons acquiring subsequent title or liens upon the property. Recording affords no actual notice defeating the right of persons to deal on the faith of representations of fact. Hartley v. Frederick, supra.

[29] The acceptance and retention of a note of the corporation, after its failure for the amount of the money invested by the plaintiff, as evidence of the amount due, without any agreement that it should be in release or satisfaction of the demand against these defendants, as appears from the undisputed evidence, presented no defense to the action.

[30] It appears, without dispute, that the negotiations began and were conducted by Mrs. Riddlesperger, the mother of this plaintiff, with reference to the investment of her own money; that the misrepresentations were made wholly to her; that during the time the defendants were advised this plaintiff was also investing to the amount of $600, and stock was issued to her accordingly. Mrs. Riddlesperger was the plenary representative or agent of this plaintiff, throughout the transaction, and invested plaintiff's money in connection with her own. Clearly there was a direct causal connection between the alleged misrepresentations to Mrs. Riddlesperger and the injury suffered by the plaintiff. All these matters affecting Mrs. Riddlesperger were competent as to this plaintiff, under proper pleading. That the plaintiff was unknown to the defendants, when the misrepresentations were made, matters not, if they induced Mrs. Riddlesperger to invest her daughter's money, and such fact came to the knowledge of the defendants at the time the transaction was closed. But the complaint throughout counts on misrepresentations made to the plaintiff, without the mention of an intervening agent.

[31] In an action of this kind, the complaint should show by whom and to whom the misrepresentations were made and the causal connection between the wrong and the injury. There was a variance between allegations and proof; not that the proof did not warrant the same recovery as the pleading, but that the means by which the fraud was perpetrated, as alleged, is at variance with that given in the evidence. The pleadings should be recast to conform to the case made by the evidence.

[32] The answers given by the defendants to interrogatories, filed in another case, are evidence in this case in the nature of admissions as against the party making such answers. There is evidence tending to show that the defendant Ellis, after being informed of the representations being made by Williams, so approved, aided, or abetted in the consummation of the transaction as to become a party to the wrong, without regard to the question of agency between him and Williams, or any conspiracy to defraud.

[33] The evidence discloses such continuing agency of the mother in taking care of the interests of her daughter and intermingling of their interests as to make competent, in this case, evidence of acts, omissions, and declarations of the parties pending and after the sale of the assets of the partnership.

[34] Evidence of a declared purpose by the defendants to see this money refunded, and of promises so to do, was competent as tending to show a recognized duty or liability in the premises, but limited to those making such statements or promises, or giving express or implied assent thereto, as a personal obligation.

[35] A wide range was properly given in developing the condition of the corporation, the position of the defendants in connection with its affairs, and their knowledge of such condition at the time of the alleged fraudulent sale of this stock.

The assignments of error are very numerous. What we have said will suffice, we believe, to furnish a sufficient guide on another trial.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.