This case involves the sale of stock in a corporation operating a drugstore in downtown Montgomery, Alabama. On November 7, 1988, the plaintiff, RNH, Inc., and the defendants entered into an agreement whereby RNH, Inc., bought and the defendants sold all of the outstanding shares of stock of Price Drug Company, Inc., an Alabama corporation.
On December 13, 1988, RNH, Inc., Price Drug Company, Inc., and Robert N. Holden sued Billy M. Beatty, a former owner of stock in Price Drug Company, Inc., alleging that Beatty had breached the stock purchase agreement by relocating another downtown drugstore, City Drug, which he owned.[1] RNH, Inc., sought damages from Beatty based on fraud and misrepresentation. Additionally, the plaintiffs sought to enjoin Beatty from operating City Drug and to rescind the stock purchase agreement. The trial court entered a summary judgment for Beatty, and denied the plaintiffs' motion for summary judgment. The plaintiffs appeal. We affirm.
Rule 56, A.R.Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a judgment as a matter of law. "In determining whether summary judgment was properly granted, the trial court must view the motion in a light most favorable to the nonmovant. Ryan v. Charles Townsend Ford, Inc.,409 So.2d 784 (Ala. 1981)." Turner v. Systems Fuel, Inc.,475 So.2d 539, 541 (Ala. 1985). Rule 56 is read in conjunction with the "substantial evidence rule" (§ 12-21-12, Code 1975) for actions filed after June 11, 1987. See Bass v. SouthTrust Bank ofBaldwin County, 538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a properly supported motion for summary judgment, the plaintiff must present "substantial evidence," i.e., evidence of such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
We first look at whether the trial court erred in entering the summary judgment for Beatty on the plaintiffs' claim that Beatty violated the stock purchase agreement by relocating City Drug. We also look at whether the trial court erred in entering the summary judgment on the plaintiffs' claims of fraud and misrepresentation.
The evidence reflects that prior to 1986 Beatty worked as a pharmacist for Laddie Price, who then owned Price Drug Company. After 10 years, Beatty became a stockholder in Price Drug Company. On December 1, 1986, Beatty purchased City Drug, a competing drugstore in downtown Montgomery. He retained his stock in Price Drug Company. Beatty is the sole stockholder of City Drug and, since purchasing it, has operated it in competition with Price Drug Company.
After Laddie Price died, Robert N. Holden, the president of RNH, Inc., sought to *Page 1041 
acquire all of the stock of Price Drug Company, including that held by Beatty. The evidence before the trial court reflects that a memorandum of understanding was executed by the shareholders of Price Drug Company. Subsequently, a 91-page stock purchase agreement was presented to Beatty's attorney, Clyde Smith, on November 4, 1988. Smith advised Beatty that he could not sign the contract because of the "non-solicitation" clause in paragraph 17 and the "preservation of organization" clause in paragraph 19. Those clauses read as follows:
 "17(b) NON-SOLICITATION: Sellers covenant and agree not to solicit the customers of Price Drug, either directly or indirectly, in Montgomery County, Alabama, and any area within a fifty (50) mile radius of Montgomery County, Alabama, for a period of five (5) years from the closing date, and further covenant and agree not to solicit any employee of Price Drug to leave his or her employment relationship with Price Drug during such five (5) year period."
 "19 PRESERVATION OF ORGANIZATION. Sellers shall exercise their reasonable best efforts to preserve the good will of the suppliers, customers, and others having business relations with Price Drug so as to cause current customers and suppliers of Price Drug to continue to do business with it after the closing date."
(C.R. 40.) Smith testified by deposition that he called both George Kent, Holden's banker, and Howard Neiswender, Holden's attorney, and advised them that Beatty could not sign the contract because, as the owner of City Drug, he was already in direct competition with Price Drug Company and planned to continue in competition.
On the morning of the scheduled closing date, a telephone conference was held between Smith, Kent, Neiswender, and a third party. Smith testified that during that telephone conference Neiswender informed him that the contract was being amended to delete the provisions Beatty found objectionable. The two clauses were amended as indicated by this emphasized wording:
 "17(b) NON-SOLICITATION: Sellers covenant and agree not to actively or directly solicit the customers of Price Drug, excluding all casual contacts and advertising in the normal course of business, in Montgomery County, Alabama, and any area within a fifty (50) mile radius of Montgomery County, Alabama, for a period of five (5) years from the closing date, and further covenant and agree not to solicit any employee of Price Drug to leave his or her employment relationship with Price Drug during such five (5) year period."
 "19 PRESERVATION OF ORGANIZATION. Sellers agree not to actively injury or harm the good will
of the suppliers, customers, and others having business relations with Price Drug so as to cause current customers and suppliers of Price Drug to continue to do business with it after the closing date."
(C.R. 41.) Ultimately all sellers, including Beatty, executed the stock purchase agreement as presented by the plaintiffs' attorney, with the amended paragraphs 17(b) and 19.
Smith testified that he recalled asking Neiswender at the closing what was intended by the language in paragraph 17 stating that the sellers would not "directly solicit the customers of Price Drug Company, excluding all casual contacts and advertising in the normal course of business." He said that Neiswender said, as an example, that the language would prohibit the sellers from standing in front of Price Drug store with an armful of fliers and passing them out to customers entering the store.
There is no dispute that plaintiff Holden and his attorney knew at the time the agreement was drafted and signed that Beatty was operating City Drug in direct competition with Price Drug Company. Further, Holden testified that no one ever represented to him that the City Drug store would never be moved from where it was located when Price Drug Company *Page 1042 
was sold. Nor was there any evidence that Holden expressed any concern to Beatty or to Beatty's attorney over a change in the location of City Drug.
At some point after the sale of Price Drug Company, Beatty moved City Drug to another building in downtown Montgomery, one and a half blocks from its original location. Beatty said that this move was made because the City Drug building was deteriorating and that it was made after his landlord had refused to make the premises suitable.
The plaintiffs sued, alleging that the relocation of City Drug violated the terms of the agreement. Plaintiff Holden testified that the new City Drug store was larger than the old store and, consequently, in his opinion, violated the agreement. Holden further testified as follows:
 "Q. [Mr. Heard:] Do you have any other factual knowledge that he solicited customers, actively or as the language says, 'directly solicited' customers, any?
"A. [Mr. Holden:] No.
". . . .
 "Q. Now, if we look at that paragraph [19] and read it, it's confusing isn't it? Sellers agree not to actively injure or harm the goodwill of the suppliers. Have any of the parties, defendants, harmed the goodwill of any of your suppliers?
"A. No.
". . . .
 "Q. To your knowledge, have any of the defendants actively injured or harmed the goodwill of, as this provision says, 'others having business relations'?
"A. Not yet."
(R. 16-18).
It is clear from the record in this case that Beatty did not violate the terms of the agreement. At the time the agreement was signed, the plaintiffs were aware that Beatty had been in direct competition with Price Drug Company for two years and that he planned to remain in competition. Although Holden testified that the relocation of City Drug concerned him, his accountant, and his tax attorney, he never conveyed this concern to Beatty, and Beatty never agreed not to change his location.
Further, the record supports the entry of summary judgment for Beatty on the plaintiffs' claims of fraud and misrepresentation. The plaintiffs contend that Beatty knew before he signed the contract that he would move City Drug, and that he therefore had a duty to disclose his plans to them. The plaintiffs cite us to the Alabama fraud statutes, Code of Alabama 1975:
 § 6-5-100 "Fraud by one, accompanied with damage to the party defrauded, in all cases gives a right of action."
 § 6-5-101 "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently acted on by the opposite party, constitute legal fraud."
 § 6-5-102 "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
Did Beatty have a duty to disclose? Our case law has held that a duty to disclose exists in circumstances where parties are not dealing at arm's length. Williams v. Bedenbaugh, 215 Ala. 200,110 So. 286 (1926), cited in Bank of Red Bay v. King,482 So.2d 274, 285 (Ala. 1985). Whether there is a duty to disclose depends upon the relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances. Id. "When both parties are intelligent and fully capable of taking care of themselves and dealing at arm's length, with no confidential relations, no duty to disclose exists when information is not requested, and mere silence is then not a fraud. There must be active concealment or misrepresentation." Mudd v. Lanier, 247 Ala. 363, 377,24 So.2d 550, 562 (1945), quoted in Jim Short Ford Sales, Inc. v.Washington, 384 So.2d 83, 86 (Ala. 1980).
In this case Beatty had no duty to disclose. The record shows clearly that the *Page 1043 
parties to this agreement were knowledgeable businessmen dealing at arm's length and acting upon the advice of competent attorneys. The agreement was negotiated and signed, with both sides inquiring as to the competition aspect of the contract. At no time was the question of relocation presented as a concern, and Beatty never agreed not to move City Drug, nor was he asked not to do so. Throughout the negotiations Beatty and his lawyer made it clear to the plaintiffs that he planned to continue in competition with Price Drug Company.
On motion for summary judgment, when the movant makes a prima facie showing that no genuine issue of material fact exists, as in the present case, the burden then shifts to the non-movant to show "substantial evidence" in support of his position. Ala. Code 1975, § 12-21-12; Bean v. Craig, 557 So.2d 1249, 1252
(Ala. 1990). The plaintiffs have failed to produce substantial evidence of breach of contract, fraud, or misrepresentation on the part of Beatty.
The final issue raised by the plaintiffs is whether the trial court erred in refusing to consider their final supplemental submission of an affidavit relating to the financial operation of Price Drug Company. The motion for summary judgment was heard on May 11, 1989, and was submitted to the trial court at that time. The plaintiffs' supplemental submission was filed on August 24, 1989. Beatty filed a motion to strike the supplemental submission, contending that the material contained therein was speculative.
Whether to allow supplemental affidavits is discretionary with the trial court. Rule 56(e), A.R.Civ.P. A trial judge may consider a tardy affidavit if it is presented to him before his ruling on the summary judgment motion. Guess v. Snyder,378 So.2d 691, 693 (Ala. 1979).
In this case the trial judge granted Beatty's motion to strike the supplemental material. The affidavit attempted to show a decline in the income of Price Drug Company. However, the affidavit did not set forth any sworn facts that would be admissible in evidence showing that any decline in sales was proximately caused by wrongdoing on the part of Beatty. The trial judge apparently found that the affidavit failed to comply with Rule 56(e), A.R.Civ.P., as being speculative and based upon the "opinion" of the affiant. We find no error in this regard.
For the reasons stated herein, the judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, JONES and HOUSTON, JJ., concur.
[1] The complaint also named as defendants other former owners: George Warren, AmSouth Bank, N.A., and Ilean D. Price, as co-executors of the estate of Laddie L. Price, deceased. These defendants were dismissed by order of the trial court on June 19, 1989. (C.R. 85.)