William E. MANN et al.,
Plaintiffs-Appellants,

v.

ADAMS REALTY COMPANY, INC., et al., Defendants-Appellees.

No. 75–3239.

United States Court of Appeals,
Fifth Circuit.

July 22, 1977.

Champ Lyons, Jr., Richard F. Allen, Montgomery, Ala., for plaintiffs-appellants.

Sydney B. Smith, Phenix City, Ala., for Adams Realty Co. & Charles Adams.

Paul J. Miller, Jr., Phenix City, Ala., for Fred L. Brinkley.

Before GOLDBERG and HILL, Circuit Judges, and KERR,[*] District Judge.

JAMES C. HILL, Circuit Judge:

Appellee Adams Realty Co., Inc. ("Adams Realty") purchased certain undeveloped lots, including the lot over which this dispute arose (lot L–8), located in Lee County, Alabama, from Kalldallen, Inc. in June, 1972. The appellees sold lot L–8 to an intermediary who in turn sold the property to appellants. After the sale, the Lee County Health Department revoked its prior approval of lot L–8 for septic tank use.

Appellants brought this action, complaining that the appellees had failed to inform them that proper soil tests, which were necessary to establish the suitability of the soil on lot L–8 for septic tank usage, had not been performed. Their complaint charged the appellees with intentional misrepresentation, negligent misrepresentation and breach of implied warranty.[1] On April 2, 1975, appellees filed a motion to dismiss under Rule 12(b)(6), F.R.Civ.P. In addition, appellees Fred Brinkley and Charles Adams filed alternative motions for summary judgment.

After one deposition had been taken, but before any further discovery, the district court on June 5, 1975, entered a memorandum opinion and order granting appellees' motion to dismiss. The court, however, declined to enter summary judgment, observing that "the motion therefor was not accompanied by proper affidavits or other supporting evidence that could be considered by the Court to determine whether or not there is a genuine issue as to any material fact in this case." Appellants thereafter filed a motion to reconsider, a motion to amend their complaint and an affidavit in support of the motion to reconsider. On June 25, 1975, the district court denied appellants' motions to amend their complaint and for reconsideration, and, on July 15, 1975, appellants filed a notice of appeal in this court.

## I. The Facts.

After Adams Realty purchased lot L–8, the president of the company, Charles H. Adams, hired one Fred Brinkley to perform certain tests on the property to determine the suitability of the soil for septic tank usage. Based on the tests he performed, Brinkley prepared a report and a topographic map showing that lot L–8 was suitable for septic tank usage. On October 10, 1972, a sanitation officer for the Lee County Health Department, James L. Maness, inspected the land owned by Adams and issued his report giving approval to lot L–8 for the installation of a septic tank system. Although his report, which was based not on further tests but entirely on Brinkley's report and his own personal observation, contained no reservations or restrictions upon the use or sale of lot L–8, Maness advised defendants Adams Realty and Charles H. Adams to secure another engineering report based on proper soil tests.

---

* Senior District Judge of the District of Wyoming sitting by designation.

1. The appellants sought $33,350 for negligent representation and an additional $30,000 in punitive damages for intentional misrepresentation.

On November 9, 1972, pursuant to usual procedures, the Maness report was approved by the Alabama Department of Public Health. In May, 1973, the appellees conveyed the undeveloped lot L–8 to an intermediary, Dennard, who in turn conveyed the lot to appellant William E. Mann, Jr.[2] Although the report of Maness was exhibited to appellant prior to his acquiring title to lot L–8, Mann was not advised of Maness' advice that the appellees should secure another report based on proper soil tests.

On August 10, 1973, the Lee County Health Department revoked its prior approval of lot L–8 for septic tank usage. Mann was advised of this revocation in the latter part of September, 1973. After learning of this revocation and being told by Maness, that he, Maness, would not change his stance on the matter, Mann nonetheless began construction of a septic tank system on lot L–8. Although construction of the system was completed in late September, 1973, Mann did not have further tests performed on the soil until some 12 months later. Mann also built a house on the lot for Dennard, who refused to accept it when the suitability of the lot for septic tank usage became a problem.

## II. *Analysis of Arguments on Appeal.*

■ The question raised by both of appellants' misrepresentation claims is whether the appellants were informed that no proper soil tests had been made on the lot and, if so, when the appellants became aware of such information. The record shows that the Maness report, made available to the appellants as indicated above, contained a notation indicating as follows:

Due to lack of information from Engr's [engineer's] report . . . no soil test

holes found—(none made) we cannot approve the low lots until wet weather test (sic) are made which are blocks S10, S8, S7, S6, S5, S4—Lot L–7 and Lot 0–2[.] All other lots in this second edition seem to be O K (A. 10).

Appellant Mann contends that he did not consider the above statement, including the "none made" notation, to have any bearing on lot L–8 since that lot was not one of the lots that had been disapproved. Moreover, Mann contends that he informed Adams of his intention to construct a house for Dennard on the lot and that Adams represented that the lot was suitable for such construction. In Mann's affidavit in support of his motion to reconsider, he claims to have made the following statement to Adams: "Charles, you know if the septic system will not work I would not buy the lot because I could not get permanent financing for my purchase." According to the affidavit, Adams responded, "Everything is fine."[3]

Mann contends that Adams told him work had been done on the lots, that lot L–8 had been approved and that no further work remained to be done on lot L–8 with respect to septic tank usage. Mann contends further that he relied on Adams' representations and agreed to purchase the lot without making inquiry as to the meaning of the "none made" notation appearing in the Maness report. As a result, Mann took title to lot L–8 under an agreement to construct a home for Dennard with title to be conveyed back to Dennard upon completion of construction. Mann also contends that when he heard of the revocation of the permit by the County, he contacted Maness and was told that the revocation occurred because some builders had begun construction on lots which had not been approved

---

**2.** Mann and Dennard had entered into a contract whereby Mann was to construct a house on the lot and then convey the property back to Dennard.

**3.** A. 29 (references to the Appendix will be designated "A" and followed by the appropriate page number).
The affidavit setting forth this colloquy between Adams and Mann was submitted to the

district court in support of appellants' motion to reconsider. Since it was not available to the court until that motion was filed, the statements contained therein have no bearing on the court's denial of appellants' earlier 12(b)(6) motion. They are relevant only to appellants' motions to reconsider and to amend the complaint.

and that Mann, not considering himself one of those guilty parties, assumed that the revocation had to do with lots other than L–8.[4]

The district court focused on two separate allegations raised by appellants in support of their claim of knowing and intentional misrepresentation: (1) the concealment by appellees that no test boring holes had been made; and (2) the concealment by appellees of Maness' verbal advice that the defendants should secure additional tests. As to the first allegation, the district court held that the statute of limitations had run because the appellants had been informed that no soil test holes were made before they purchased the lot. The court noted that, before Mann took title to lot L–8 on May 24, 1973, Charles Adams showed him a copy of the Maness report indicating that no test holes had been made. Since this occurred well before a year prior to the commencement of this action, the court granted appellees' motion to dismiss under Rule 12(b)(6).

The court also dismissed the second allegation of knowing and intentional misrepresentation on the ground that the court believed a mere concealment or nondisclosure of a fact was insufficient to constitute an actionable fraud in Alabama. Furthermore, the court held that even if a valid claim had been stated, it would also be barred by the statute of limitations. The court held that the plaintiffs were forewarned of the fraud shortly after August 10, 1973, on which date the Lee County Health Department revoked its initial approval of lot L–8 for septic tank use. This notice, the district court held, required the appellants to discover any more specific facts which they contended constituted a fraud against them. Since the appellants' complaint failed to allege that they had made any effort to discover such facts, the district court concluded that the claim was barred. Moreover, the court denied appellants' motions to amend the complaint and to reconsider, even though the latter motion was accompanied by an affidavit indicating that appellant Mann had attempted to determine the cause of the revocation.

The court also indicated that neither of the claims remained viable under another Alabama statute of limitations pertaining to persons who design, plan, supervise or construct improvements on real property,[5] since the subject matter of this suit is the suitability of the soil for septic tank use and not a claim pertaining to an improvement on the real estate.

The appellants take issue with all of the above conclusions of the district court. First, the appellants contend that the "none made" notation on the Maness report was inadequate to put them on notice that no test holes had been made on lot L–8. The notation, they suggest, might indicate to a reasonable man that only Maness himself had not made any test holes or that the notation did not apply to lot L–8 in any way since that lot was not specifically mentioned. In response to this argument, the appellees contend that the information contained in the report is a sufficient statement of facts to provoke inquiry in the mind of a reasonable, prudent person. The appellees contend further that appellants

4. A. 30.

5. This provision, contained in the Code of Alabama, Title 7 § 23(1), was characterized by the court as "a statute regarding suits against architects, contractors and the like for breach of contract or negligence in planning or making improvements on land." The statute states as follows:

All actions against persons who performed or furnished the design, planning, supervision or construction of improvements on real property, whether based on contract or tort, for damages arising out of any act or omission of such persons in the design, planning, supervision or construction of such improvements, must be commenced within four years after the final completion of such improvements, and not afterwards. Provided that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than seven years after such act or omission.

received notice of their potential claim against appellees no later than the time when Mann, in the latter part of September, 1973, discovered that the County permit had been revoked. The appellees also contend that the notice of revocation would have prompted a reasonable, prudent person to take measures to inquire as to the suitability of the lot for septic tank usage.

In response to this latter contention, the appellants argue that Mr. Mann in fact exercised due diligence by inquiring of Maness as to the cause of the revocation. Although Mann discussed this matter with Maness, who told him that the problem pertained to other lots and not to his, Mann did not contact the appellees about this problem. Moreover, the appellees argue that Mann insisted on beginning construction on his lot even after he was advised by Maness that he, Maness, would not change his stance on the matter. The appellees contend further that Mr. Mann was in the business of constructing residential buildings, and, due to his expertise and knowledge in this area, he should be charged with certain knowledge and responsibilities as to the suitability of the land. Finally, the appellees note that Mann completed construction of his septic tank system in September, 1973. He did not, however, have the system tested immediately upon completion to determine if it would in fact perform as it should. Appellees contend that he waited almost a year to have the tests made, even though, under standard business practice, a building contractor would have had the inspection done immediately once the work was completed. The appellees further contend that, although the district court relied upon both the revocation letter of August 10, 1973, and the "none made" notation in the Maness report as giving notice to the appellants, both or either of these events would have been sufficient to commence the running of the statute of limitations.

### III. *Application of Rule 12(b)(6).*

#### A. *The Statute of Limitations Defense.*

A Rule 12(b)(6) motion to dismiss for failure to state a claim is an appropriate method for raising a statute of limitations defense.[6] It has long been the rule, however, that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Cook & Nichol, Inc. v. Plimsoll Club,* 451 F.2d 505 (5th Cir. 1971). Moreover, in evaluating the sufficiency of the pleading attacked on motion, both the district court and this court are required to construe the complaint in the light most favorable to the plaintiff and to take the allegations contained therein as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Rule 8(f), Fed.R. Civ.P. The plaintiff need not set forth all the facts upon which the claim is based; rather, a short and plain statement of the claim is sufficient if it gives the defendant fair notice of what the claim is and the grounds upon which it rests. Rule 8(a)(2). A 12(b)(6) motion tests only the sufficiency of the claim set out in the plaintiff's pleadings. Denial of such a motion, therefore, does not indicate that the plaintiff will ultimately prevail on a claim which withstands a 12(b)(6) challenge. Applying these principles, we proceed to review the conclusions of the district court.

The district court concluded that the appellants knew or should have known of their claims against defendants prior to the one year period preceding commencement of the action. The court held that either of two events was sufficient to put the appellants on notice of their potential misrepre-

---

**6.** 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357:

A complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading.

Since 9(f) makes averments of time material, the inclusion of dates in the complaint indicating that the action is untimely renders it subject to dismissal for failure to state a claim. *Id.* at 608.

sentation claims against the appellees. Since both of these incidents occurred more than one year before this action was filed, the court concluded that the claims were barred by a one-year Alabama statute of limitations pertaining to actions seeking relief on the ground of fraud. That provision, Code of Alabama, Title 7, § 42, states as follows:

In actions seeking relief on the ground of fraud where the statute has created a bar, the cause of action must not be considered as having accrued *until the discovery by the aggrieved party of the fact constituting the fraud*, after which he must have one year within which to prosecute his suit. (emphasis supplied).[7]

The court first attached considerable significance to the appellants' awareness of the Maness report, which contained the rather cryptic notation "no soil test holes found—(none made)." The court observed that the appellants had conceded knowledge of the report. Such knowledge, the court concluded, was sufficient to apprise the appellants of their potential claims and to trigger the running of the one year statutory period. We disagree. The notation in the Maness report did not notify the appellants of "the fact constituting the fraud," namely, that no soil tests had been made by anyone and that appellees had been advised to have proper tests performed.

With respect to their knowledge of the Maness report, appellants' complaint states in pertinent part as follows:

16. Maness stated in his report that no soil test holes were made and Maness approved only those lots which from personal observation appeared satisfactory for septic tank systems.

\* \* \* \* \* \*

18. Plaintiff did not learn of the allegations in paragraph 15, 16, and 17, within one year next prior to the commencement of this action.

\* \* \* \* \* \*

20. Mann took title to said Lot L–8 on May 24, 1973, after Defendant Adams and Defendant Realty had shown him the report of Maness referred to in paragraph 16 above, wherein approval of Lot L–8 had not been withheld.

■ The district court read the plaintiff's allegation that he had been shown the Maness report as notifying him of a potential claim for misrepresentation. The court's conclusion, however, is based on the assumption that Mann interpreted the "none made" notation to mean that *the appellees* had failed to have any tests made despite Maness' recommendation. Mann contends that he did not so interpret the notation, but that his understanding was simply that Maness, the author of the report, had made no test holes. Since it was Maness, and not the appellees, who authored the report, such an interpretation is at least as reasonable as the conclusion of the district court. Although the "none made" notation might arguably be susceptible of more than one meaning, the court was required to read the complaint in the light most favorable to the plaintiff. Yet the court chose an interpretation which was fatal to the cause of action. We conclude, however, that the Maness report was inadequate to constitute, as a matter of law, notice to the appellants of their potential claims for misrepresentation. Thus, it was insufficient as a basis for concluding, as a matter of law, that the statute of limitations commenced to run as of its delivery to plaintiff.

The district court read too much into the Maness report and, at the same time, attached too little significance to the allegations in paragraph 18 of the complaint that appellants did not learn of the potential misrepresentation claim before one year prior to the commencement of this action. By conceding knowledge of the Maness report and simultaneously alleging that they were unaware of the potential claim within one year preceding commencement of the

---

7. The general statute of limitations for torts in Alabama is one year. Code of Alabama, Title 7, § 26. Section 42 of that title, however, provides a savings statute for instances where the fraud is concealed from the plaintiff. The plaintiff carries the burden of proving that the exception applies. *Hall v. Hulsey*, 271 Ala. 576, 126 So.2d 217 (1961).

action, appellants raised a factual question concerning the extent of their knowledge. In construing the district court pleadings, however, the district court erred by equating knowledge of the report with knowledge of "the fact constituting the fraud." This conclusion by the court overlooks the very wording of the report itself.

Since the report does not even refer to lot L–8, it is clear that Maness did not disapprove the lot. Approval was withheld only on those lots specifically mentioned, and the stated reason—as indicated by the "none made" notation—was the absence of soil tests. Therefore, it is at best unclear whether the notation applied to lot L–8 or to any other lot not specifically mentioned. Under these circumstances, it was erroneous for the court to conclude from the pleadings that appellants understood the "none made" notation to apply to lot L–8. Similarly, it was error to equate appellants' knowledge of the Maness report with knowledge of a potential misrepresentation claim for purposes of beginning the one-year statute of limitations period.

■ Although the district court resolved these fact questions merely on the basis of the available pleadings, the issue of when the fraud was discovered was, under Alabama law, a jury question. *Loch Ridge Construction Co. v. Barra*, 291 Ala. 312, 280 So.2d 745, 751 (1973) (plaintiff entitled to go to the jury where there is evidence reasonably affording an inference as to whether the plaintiff was defrauded, and if so, when the plaintiff discovered the fraud); *State Security Life Ins. Co. v. Henson*, 288 Ala. 497, 262 So.2d 745, 751 (1972). Similarly, this court has found a jury question when a district court was required to determine, under Alabama law, when an alleged fraud was discovered. *Industrial Dev. Bd. of Section, Ala. v. Fuqua Indus.*, 523 F.2d 1226 (5th Cir. 1975).

■ If the court had taken evidence on the question of knowledge and diligence and had, as a result, dismissed plaintiff's complaint, this would be a different case. *See Walker v. American Motorists Ins. Co.*, 529 F.2d 1163 (5th Cir. 1976). There is no indication that the court even considered the only evidence before it, *i. e.*, the Maness deposition. Moreover, the court's refusal to consider plaintiff's alternative motion for summary judgment was based on what it described as the absence of "proper affidavits or any other supporting evidence that could be considered by the Court to determine whether or not there is a genuine issue as to any material fact in this case." We conclude that the portion of the district court's order concerning the statute of limitations was premature. It dismissed the plaintiff's complaint on the flimsiest of pleadings and resolved, without consideration of any evidence, many implicit factual questions.

The other event relied upon by the court as notifying the appellants of their potential claim—the revocation of the septic tank permit by Lee County—was also insufficient to constitute notice to the appellants, as a matter of law, of the potential misrepresentation claims. The court held that the County's revocation placed appellants "under a duty to discover the more specific facts which they contend constituted a fraud against them." The court also concluded that "[t]here is no evidence that the plaintiffs made any effort whatsoever to discover such facts. . . ."

■ The Alabama Supreme Court has held that facts constituting a fraud are considered to be discovered when they should have been discovered by one who has acquired knowledge sufficient to provide inquiry in the mind of a person of ordinary prudence. *Butler v. Guaranty Savings & Loan Ass'n*, 251 Ala. 449, 37 So.2d 638 (1948); *Williams v. Bedenbaugh*, 215 Ala. 200, 110 So. 286 (1926). One who is being deceived, however, may be lulled into a false sense of security. Consequently, "[a] party thus situated is not required to presume fraud or suspect it, until something comes to him leading a just person to suspect and make inquiry." *Williams, supra.* Thus the diligence of the appellants in discovering their potential misrepresentation claims was called into question by appellees' statute of limitations defense.

At the point when the court granted appellee's 12(b)(6) motion, the pleadings did not in fact reveal that appellants had attempted to discover the reason for the revocation. There was no evidence before the court concerning the appellants' diligence or lack thereof. The appellants, however, later tendered evidence for the purpose of demonstrating diligence in pursuing the cause of the revocation. In the affidavit accompanying his motion to reconsider, appellant Mann asserted that he had contacted Maness upon learning of the revocation. According to Mann, Maness explained that the revocation occurred because some builders had begun construction on certain unapproved lots. Mann described his reaction to this explanation as follows: "Not being one of the guilty parties, I protested to Mr. Maness, but he said that he was not going to change his stance on the matter."

Mann's affidavit is in direct conflict with the district court's conclusion that he made no effort to inquire why the permit was revoked. Upon appellants' motion to reconsider, therefore, the court was faced with the factual question whether Mann's call to Maness constituted a reasonable effort to discover the specific facts the knowledge of which would have caused the statute of limitations period to begin running. Since the appellants' motion to reconsider was denied, we must assume that the court implicitly found Mann's effort not to be reasonable under the circumstances. The tacit determination by the district court of these factual questions, however, was inappropriate in the context of a 12(b)(6) motion. Rather, the question of diligence was a question of fact for the jury. See discussion *ante* at pages 294–295.

### III. *Appellants' Claims of Negligence Misrepresentation and Concealment.*

With respect to both of appellants' misrepresentation claims, the district court ex-

pressed doubt that the mere concealment or nondisclosure of a fact constituted an actionable fraud in Alabama. Moreover, after holding that appellants' claim of negligent misrepresentation was barred by the statute of limitations, the district court stated that it had been unable to determine whether claims for negligent misrepresentation are actionable in Alabama. The court was "not convinced that the mere concealment or nondisclosure of a fact, such as the Defendants' failure to apprise the Plaintiffs that Maness advised the Defendants to secure additional engineering tests, constitutes an actionable fraud in Alabama." Apparently understanding the appellants' claims to be based on concealment alone, the court expressed its concern that such a claim might be an insufficient basis for a cause of action generally thought of as entailing an affirmative misrepresentation.[8]

There are two sections of the Code of Alabama which might apply to appellants' claims of concealment. They provide as follows:

> Misrepresentations of a material fact, made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitute legal fraud. Title 7, § 108.

> Suppression of a material fact, which the party is under an obligation to communicate, constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties, or from the particular circumstances of the case. Title 7, § 109.

The first of these, § 108, on its face requires an affirmative statement or representation. The misrepresentation may be willful or it might be "made by mistake and innocently,"[9] but it must be "made" in any event.

---

8. The court's restrictive reading of appellants' claims is manifest from the following statement in its order: "Since the instant case involves no affirmative representation of fact but rather the concealment of a fact, it is doubtful that an action for negligent representation could be

had on the facts of this case in any jurisdiction."

9. In view of this language we are puzzled by the district court's statement: "after a diligent search, this Court has been unable to positively

In order to state a claim for relief under this provision, therefore, the appellants were required to allege more than misrepresentation by inaction or fraud by silence. In paragraph 29 of their complaint, appellants alleged that "[d]efendants Adams and Realty and Brinkley, separately and severally, negligently misrepresented material facts in connection with the engineering tests upo[n] which Plaintiff Mann relied to his detriment, leading Plaintiff Mann to purchase Lot L–8 under the false impression that said lot was fit. . . ." Furthermore, in his affidavit, appellant Mann states that appellee Adams made an affirmative representation to him that "Everything [was] fine" concerning the septic system. *Ante* at page 291. Thus, it is clear from the Mann affidavit that the appellants alleged both concealment and active misrepresentation in support of their claims. Although the original complaint speaks principally in terms of concealment, paragraph 29 and the allegations raised in Mann's affidavit make it clear that misrepresentative statements, as well as concealment, are alleged. Since these averments were adequate to state a claim under § 108, the district court should have granted appellants' motions to reconsider and to amend the complaint. This is not to say that the appellants will prevail on the merits of their claims; we simply conclude that the pleadings adequately stated a misrepresentation claim upon which relief could be granted.

We next consider whether the appellants stated a claim for concealment under § 109 of the Alabama Code. Couched in terms of suppression of a material fact, that section is somewhat limited in scope. The party accused must be under an obligation to communicate the fact suppressed, and such an obligation may arise only from "the confidential relationship of the parties" or from "the particular circumstances of the case." When neither a confidential relationship nor special circumstances exist,

the nondisclosure of a material fact is fraudulent only if done with intent to deceive. *Metropolitan Life Ins. Co. v. James*, 238 Ala. 337, 191 So. 352 (1939). A confidential relationship may exist between a vendor and a vendee, *Finklea v. Perryman*, 239 Ala. 450, 195 So. 551 (1940), or between a grantor and a grantee, *Standard Motorcar Co. v. McMahon*, 203 Ala. 158, 82 So. 188 (1919).

In the absence of a confidential relationship, the particular circumstances of the case may give rise to an obligation to communicate the fact in question. Where the accused has superior knowledge of the suppressed fact and the defrauded party has been induced to take action which he might not otherwise have taken, the obligation to disclose is particularly compelling. *Chapman v. Rivers Construction Co.*, 284 Ala. 633, 227 So.2d 403, 410–413 (1969). Although the district court did not even consider the applicability of § 109, we find that appellants have stated a claim under that section upon which relief might be granted. We hazard no guess as to the likelihood of appellants' adducing evidence to support the claim, but we remand for further consideration in light of the foregoing comments.

### IV. *Conclusion.*[10]

Although this case must be remanded to the supervision of the trial court, we caution that all we have determined here is that the complaint states a claim under Alabama law and cannot therefore be disposed of on the pleadings. *Webb v. Standard Oil Co.*, 414 F.2d 320 (5th Cir. 1969). As the court has often done before, we remand "without the slightest murmur of a suggestion as to how it should or will come out when the real facts, not what the lawyers say the facts are, are developed or the lack of them demonstrated to a certainty warranting summary judgment, directed verdict or the like." *Merlite Land, Inc. v.*

---

determine that claims of negligent misrepresentation are actionable in Alabama."

10. We affirm the conclusion of the district court that plaintiff failed to state a claim for breach of implied warranty.

*Palm Beach Invest. Prop.*, 426 F.2d 495 (5th Cir. 1970).[11]

Reversed and Remanded.

11. Should plaintiff prevail, at trial, on the issues discussed here, question may legitimately arise as to the proximate cause of some claimed damages. We commend to the trial court's consideration whether the plaintiff's having constructed the septic system after notice of disapproval of the lot's use with a septic tank was the cause of loss rather than any prior misrepresentations that defendants may be found to have made.