PAN AMERICAN BANK OF MIAMI,
Plaintiff-Appellee,

and

Tracor Marine, Inc., Intervening Plaintiff-Appellee,

v.

The OIL SCREW DENISE, her engines, etc., et al., Defendants,

The OIL SCREW DENISE, her engines, etc., the OIL SCREW TAMMY W., etc., the BARGE MECI 8, her apparel, etc., the BARGE MECI 9, her apparel, etc. and Marine Exploration Company, Inc., a corporation, Defendants-Appellants.

No. 79–1759
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 14, 1980.

E. S. Ned Nelson, New Orleans, La., for defendants-appellants.

Rodney Earl Walton, Miami, Fla., for Pan American Bank of Miami.

Before GEE, RUBIN and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Invoking admiralty jurisdiction the Pan American Bank of Miami (Bank) foreclosed on a first preferred ship's fleet mortgage against Marine Exploration Company, Inc. (Marine). Tracor Marine, Inc. (Tracor) intervened asserting an *in rem* claim for a repair bill against a Marine vessel, the *Tammy W*. After a bench trial the district court rendered judgment in favor of the Bank against Marine *in personam* and several Marine vessels *in rem,* and in favor of Tracor against the *Tammy W. in rem.* We affirm.

This litigation involves several consolidated actions. The Bank first filed in the Southern District of Florida naming Marine *in personam* and eight of its vessels *in rem.* Two of the vessels were seized in the jurisdiction. Simultaneously, the bank intervened *in rem* against the vessel *Denise* which was already under arrest in the Middle District of Florida. Shortly thereafter an *in rem* action was filed against the *Tammy W.* in the District Court of Puerto Rico. Tracor intervened to collect a repair bill. The defendants posted a bond in lieu of the vessels. The Puerto Rico and Middle District actions were transferred and consolidated with the Southern District action.

The record is replete with discretionary acts by the district judge extending opportunities to defendants to prepare and present their case. This included setting aside default judgments, excusing responsive pleadings in the Puerto Rico action and enlarging the time for discovery way beyond the cut-off date noted in the pretrial stipulation.

After entry of final judgment Marine appealed. Motions to dismiss the appeal for Marine's failure to timely comply with procedural requirements were denied. A motion to this court to dismiss the appeal as frivolous and non-meritorious has been ordered carried with the case. Marine's brief

asserts no error in the judgment in favor of Tracor.

The facts as found by the district court are not clearly erroneous, to the contrary, they are quite clearly correct. The Bank made two loans to Marine, evidenced by a $350,000 note, a $100,000 note, two first preferred ship's fleet mortgages and a loan and security agreement. The $100,000 note was payable on demand. The $350,000 note was a term note calling for monthly payments. The loan and security agreement, made a part of both notes by reference, required Marine to, inter alia, maintain a certain amount of working capital, a certain ratio of current assets to current liabilities and a certain ratio of net worth to company debt. From and after May 31, 1976, as reflected by financial statements Marine furnished the Bank, these conditions were violated. Marine's year end consolidated financial statement (ending November 30, 1976) contained an acknowledgment of these violations and that the Bank could declare all indebtedness due and payable. In February, 1977, the Bank made demand on the $100,000 note which was to be paid in full by April 28, 1977. This was not done. The monthly payment due on the term note on May 3, 1977, was not paid. Insurance on the vessels would have lapsed on May 15, 1977, but for the Bank paying the underwriter $18,000 to avoid cancellation.

Suit was filed on May 16, 1977. The district court made the following findings, most of which were admitted by Marine:

(1) Payments on both the term and demand notes were past due on May 16, 1977.

(2) The mortgages had been breached by virtue of Tracor's placing of a lien on the vessel *Tammy W.*

(3) The loan and security agreement had been breached in that:

a. working capital was below the agreed minimum of $140,000;

b. current assets were less than 100% of current liabilities;

c. Marine's net worth was less than 1.3 million dollars.

## Issues on Appeal

Appellant presents three issues for review. The first challenges the district court's finding that one of the defaults was the violation of the underlying agreement when the complaint made reference to negative covenants in the *mortgage* rather than in the loan and security agreement. Marine contends it did not have adequate notice that breaches of the loan agreement would be at issue.

■ The notes, attached to the complaint, incorporated the loan agreement by reference. The agreement was listed as Exhibit No. 33 for the Bank in the pretrial order and was incorporated into Marine's own pretrial exhibit list. It was introduced at trial without objection. The appellant's contention that it did not have adequate notice is totally without merit. Fed.R. Civ.P. 8(a)(2), *Mann v. Realty Co.,* 556 F.2d 288 (5th Cir. 1977); Wright & Miller, 5 *Federal Practice and Procedure* § 1215. Even if there were inadequate initial notice, the listing of the exhibit in the pretrial order and the introduction without objection cured any defect.

The second issue is whether the maritime lien attached to the motor vessel *Tammy W.* when it left the Tracor yard following repairs, which was before the suit was filed, or at a subsequent date after suit was filed.

The mortgage made it an act of default if the owner of the vessel permitted a lien to be placed on the mortgaged vessel except for salvage and crew's wages. It provided:

Neither the Owner, Agent nor Master of the vessel has or shall have any right, power or authority to create, incur or permit to be placed or imposed on the vessel or any part thereof any liens whatsoever other than to the Mortgagee or for crew's wages or salvage.

†Such a provision is consistent with the Ship's Mortgage Act, 46 U.S.C. § 951, which permits the Bank to foreclose the mortgage for any default in the terms of the mortgage. The first two sentences of this section declare:

A preferred mortgage shall constitute a lien upon the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by such vessel. Upon the default of any term or condition of the mortgage such lien may be enforced by the mortgagee by suit in rem in admiralty.

The district court held that Marine defaulted on the mortgage by allowing a lien for repairs to attach to the *Tammy W.* prior to the foreclosure suit being filed. The district judge concluded that the lien attached as of the time the vessel left the custody of Tracor with the repair bill outstanding. We are cited to 55 C.J.S. verbo *Maritime Liens* § 30 for the proposition: "The only thing necessary to create a lien under the general maritime law or statutes declaratory thereof is the rendition of the service to the vessel . . .". We are also invited to review *The Eastern Shore,* 31 F.Supp. 964 (D.Md.1940), where the court held that a lien for repair work for constructing a rudder on a vessel arose when the rudder was actually installed.

We conclude that the lien attached when the *Tammy W.* left the custody of Tracor with its repair bill unpaid. That arrangements for subsequent payment may have been made is material to the time at which the lien might be enforced, but not to when it comes into being. From the time the *Tammy W.* left Tracor's yard Tracor had a lien. That there may have been a credit arrangement making enforcement of the lien premature would not belie existence of the lien.

The third issue challenges whether the notes were in default because of the Bank's application and misapplication of funds and its prior conduct. The district court's findings on application of funds are not challenged as erroneous. The district court made no finding on misapplication although one witness suggested such existed. There was also countervailing evidence. Further, the evidence does not support the conclusion of a course of conduct of the Bank routinely accepting late payments. If it did we would have a question of waiver.

Waiver is an affirmative defense, Fed.R. Civ.P. 8(c), which must be specially pled. Even were it otherwise, appellant contracted away the benefits of any such forebearance. Section VIII of the loan agreement (Plaintiff's Exhibit 1) declares:

> Borrower consents to and waives notice of the granting of indulgences or extensions of time of payment . . . at such time or times as the Bank may deem advisable. . . . No delay by the Bank to exercise any right, power or remedy hereunder or under any security arrangement and no indulgence given to the Borrower in case of any default shall impair any such right, power or remedy or be accrued as a waiver of any default by the Borrower or any acquiescence therein or is a violation or waiver of any of the terms or provisions of this Agreement or as a release or discharge of the Guarantor.

Additionally, the demand note, also part of Exhibit 1, contains this language:

> No delay on the part of the bank and/or of anyone in whose behalf it has acted or shall act as herein provided, or of any transferee, in exercising any power or right hereunder shall operate as a waiver thereof;

There is no merit in this issue.

The final issue is the Bank's motion for dismissal of the appeal under Fifth Circuit Local Rules 17 and 20. There is a great deal of merit in appellee's motion. Were it not that we find some merit in the second issue, which appellant was entitled to have this court address, we would be disposed to grant appellee's motion and impose appropriate and meaningful sanctions.

For these reasons, the decision of the district court is

AFFIRMED.