IN THE UNITED STATES DISTRICT COURT 
 FOR THE MIDDLE DISTRICT OF ALABAMA 
 NORTHERN DIVISION 

MATTHEW REEVES, ) 
 ) 
 Plaintiff, ) 
 ) 
v. ) CASE NO. 2:20-CV-027-RAH 
 ) [WO] 
JEFFERSON S. DUNN, et al., ) 
 ) 
 Defendants. ) 
 ) 

 MEMORANDUM OPINION AND ORDER 

 I. INTRODUCTION 

 Plaintiff Matthew Reeves (hereinafter “Reeves”) is an Alabama death-row inmate 
in the custody of the Alabama Department of Corrections (“ADOC”). At present, Reeves 
has no scheduled execution date. On January 10, 2020, Reeves filed a complaint under 42 
U.S.C. § 1983, asserting two causes of action against Defendants Jefferson Dunn, 
Commissioner, ADOC; and Cynthia Stewart, Warden, Holman Correctional Facility, in 
their official capacities, for deprivation of his constitutional rights under the Eighth 
Amendment to the United States Constitution and his rights under the Americans with 
Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (ADA). Reeves seeks declaratory and 
injunctive relief. (Doc. 1.) 
 This matter is before the Court on Defendants’ motion to dismiss, pursuant to Fed. 
R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. (Doc. 
11.) The motion has been fully briefed and is ripe for review. Defendants’ motion to 
dismiss is due to be granted in part and denied in part. 
A. Reeves’ Capital Litigation History 

 In 1998, Reeves was convicted of the capital murder of Willie Johnson. The murder 
was made capital because it was committed during a robbery in the first degree, a violation 
of Ala. Code § 13A–5–40(a)(2). By a vote of 10–2, the jury recommended that Reeves be 
sentenced to death for this capital murder conviction. The trial court followed the jury’s 
recommendation and sentenced Reeves to death. The Alabama Court of Criminal Appeals 

(“ACCA”) affirmed Reeves’ conviction and sentence. Reeves v. State, 807 So. 2d 18 (Ala. 
Crim. App. 2000). The Alabama Supreme Court denied certiorari review, and the ACCA 
issued a certificate of judgment on June 8, 2001. Id. His direct appeal concluded on 
November 13, 2001, when the United States Supreme Court denied certiorari review. 
Reeves v. Alabama, 534 U.S. 1026 (2001). 

 In October 2002, Reeves filed a Rule 32 Petition in the trial court for collateral relief 
pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. Reeves amended his 
Rule 32 Petition twice, first in February 2003 and again in August 2006.1 On November 
28-29, 2006, the Rule 32 court held an evidentiary hearing on Reeves’ claims. See Reeves 
v. State, 226 So. 3d 711, 722 (Ala. Crim. App. 2016). At this hearing, Reeves’ medical 

expert, Dr. John Goff, testified that Reeves suffered from significantly subaverage 

1 Reeves raised an Atkins claim in his Rule 32 Petition. In Atkins v. Virginia, 536 U.S. 304 (2002), 
the Supreme Court held that execution of an individual who is intellectually disabled violates the 
Eighth Amendment. Reeves claimed that because he was “mentally retarded,” a term now more 
commonly referred to as “intellectually disabled,” Atkins prohibited his execution. 
intellectual functioning. On the other hand, the State’s expert, Dr. Glen King, testified that 
Reeves falls within the borderline range of intellectual functioning. In the final analysis, 
the Rule 32 court rejected Reeves’ intellectual disability claim and denied his Rule 32 

Petition. Reeves appealed. Upon review of the Rule 32 court’s analysis of Reeves’ 
intellectual disability claim, the ACCA approved, stating: 
 . . . The circuit court, after considering all the evidence presented at the 
 hearing, and after observing Reeves when Reeves testified at a pretrial 
 hearing, resolved the conflicting expert testimony as to Reeves’s 
 intellectual functioning adversely to Reeves, finding that, although 
 Reeves’s intellectual functioning was subaverage, it was not significantly 
 subaverage as required to meet the first prong of intellectual disability. 
 “Conflicting evidence is always a question for the finder of fact to 
 determine, and a verdict rendered thereon will not be disturbed on 
 appeal.” Padgett v. State, 668 So.2d 78, 86 (Ala. Crim. App. 1995). There 
 is ample evidence in the record to support the circuit court’s finding and 
 we will not disturb the circuit court’s resolution of the conflicting expert 
 testimony. Therefore, we find no abuse of discretion on the part of the 
 circuit court in concluding that Reeves failed to prove by a preponderance 
 of the evidence that he suffered from significantly subaverage intellectual 
 functioning. 

Reeves, 226 So. 3d at 741. 

 The ACCA also found that the Rule 32 court did not abuse its discretion in finding 
that Reeves failed to prove by a preponderance of the evidence that he suffered from 
significant deficits in at least two areas of adaptative functioning. Id. The ACCA noted 
that the Rule 32 court considered the conflicting expert testimony concerning Reeves’ 
adaptive functioning and “resolved the conflicts adversely to Reeves.” Id. at 743 (citation 
omitted). Finally, the ACCA concluded that the Rule 32 court properly considered 
evidence regarding Reeves’ adaptive functioning other than that expert testimony— 
 such as Reeves’s technical abilities in brick masonry, welding, and 
 automobile mechanics; Reeves’s ability to work construction and do so 
 reliably when he was not around his brother, Julius; Reeves’s 
 participation in a drug-sale enterprise in which he was able to make 
 thousands of dollars a week that he then used to purchase personal items 
 and a car; and particularly Reeves’s cold and calculated actions 
 surrounding the murder, including planning the robbery with his 
 codefendants, hiding incriminating evidence after he had shot the victim, 
 splitting the proceeds of the robbery with his codefendants, and bragging 
 about the murder, claiming that he would earn a “teardrop”—a gang 
 tattoo indicating that a gang member had killed someone—for the 
 murder. . . . There is ample evidence in the record to support the circuit 
 court’s finding that Reeves did not suffer from significant deficits in at 
 least two areas of adaptive functioning, and we will not disturb the circuit 
 court’s resolution of the conflicting evidence. Therefore, we find no 
 abuse of discretion on the part of the circuit court in finding that Reeves 
 failed to prove by a preponderance of the evidence that he suffered from 
 significant deficits in at least two areas of adaptive functioning. 
Id. Subsequently, the Alabama Supreme Court denied certiorari, as did the U.S. Supreme 
Court. Reeves v. Alabama, ____ U.S. ____, 138 S.Ct. 22 (2017) (Sotomayor, J., 
dissenting). 
 Reeves then filed a federal habeas corpus petition, pursuant to 28 U.S.C. § 2254, in 
the Southern District of Alabama and raised an Atkins claim therein as he had in the state 
habeas proceeding. Ultimately, the district court denied Reeves’ habeas petition, 
concluding that he was entitled to no relief on any of his claims; however, the district court 
granted Reeves a Certificate of Appealability (COA) with respect to his claim that his trial 
counsel was ineffective for failing to hire an expert to investigate his intellectual disability. 
Reeves v. Dunn, Case No. 1:17-cv-061-KD (S.D. Ala. Jan. 8, 2019), Doc. 29. 
 In May 2019, Reeves appealed the denial of his habeas petition to the Eleventh 
Circuit. See Reeves v. Comm’r Ala. Dep’t of Corrs., No. 19-11779-P (11th Cir. May 7, 
2019). In September 2019, the Eleventh Circuit expanded the COA to include the 

following issues: 
 . . . (1) whether Mr. Reeves is intellectually disabled and therefore 
 ineligible for the death penalty; (2) whether trial counsel rendered 
 ineffective assistance by not conducting a sufficient mitigation 
 investigation and not hiring a defense mitigation expert; and (3) whether 
 the Alabama Supreme Court incorrectly held that trial counsel’s 
 testimony is required to establish an ineffectiveness claim under 
 Strickland v. Washington, 466 U.S. 668 (1984). 

Id. (11th Cir. Sept. 9, 2019). This matter remains pending before the Eleventh Circuit, 
which will conduct oral argument on the foregoing issues on August 19, 2020. See 
Reeves v. Comm’r Ala. Dep’t of Corrs., No. 19-11779-P (11th Cir. May 20, 2020). 
B. Backdrop of the present action 

 1. Nitrogen hypoxia became a second alternative method of execution 
 On July 1, 2002, lethal injection replaced electrocution as Alabama’s primary 
method of execution, and therefore electrocution became an alternative execution 
method.2 Ala. Code § 15-18-82.1(a). In March 2018, the Alabama Legislature added 
nitrogen hypoxia as a second alternative execution method, effective as of June 1, 2018.3 
Those who were subject to execution by lethal injection could choose nitrogen hypoxia as 

2 Those convicted prior to July 1, 2002, could choose electrocution as their execution method by 
following the prescribed procedure. See Ala. Code § 15-18-82.1(b)(1). 

3 See 2018 Alabama Laws Act 2018-353 (S.B. 272). 
their execution method by following the prescribed procedure outlined in Ala. Code § 15-
18-82(b)(2): 
 The election for death by nitrogen hypoxia is waived unless it is 
 personally made by the person in writing and delivered to the warden of 
 the correctional facility within 30 days after the certificate of judgment 
 pursuant to a decision by the Alabama Supreme Court affirming the 
 sentence of death. If a certificate of judgment is issued before June 1, 
 2018, the election must be made and delivered to the warden within 30 
 days of that date. If a warrant of execution is pending on June 1, 2018, 
 or if a warrant is issued within 30 days of that date, the person who is the 
 subject of the warrant shall waive election of nitrogen hypoxia as the 
 method of execution unless a written election signed by the person is 
 submitted to the warden of the correctional facility not later than 48 hours 
 after June 1, 2018, or after the warrant is issued, whichever is later. 
Id. 
 As it concerns Reeves, the certificate of judgment on his conviction issued prior to 
June 1, 2018. Thus, from June 1 to June 30, 2018, Reeves, like all other death-sentenced 
inmates whose certificates of judgment issued prior to June 1, 2018, could elect execution 
by nitrogen hypoxia. Reeves did not make that election during this time-frame. 
 2. The midazolam litigation that was dismissed in 2018 
 In April 2012, death-row inmate Carey Dale Grayson filed an action under 42 
U.S.C. § 1983 challenging the constitutionality of Alabama’s lethal injection protocol, 
alleging that it violated his Eighth and Fourteenth Amendment rights. See Grayson v. 
Dunn, No. 2:12-cv-316-WKW (M.D. Ala. 2012), Doc. 1. Over time, several other death 
row inmates filed nearly identical challenges to Alabama’s lethal injection protocol. 
Ultimately, due to common questions of law and fact, these cases were consolidated to 
promote judicial economy, eliminate duplication of discovery, and avoid unnecessary 
costs. Id. Additionally, the litigation was recaptioned as In re: Alabama Lethal Injection 
Protocol Litigation, No. 2:12-cv-316-WKW (M.D. Ala. 2012), Doc. 346.4 
 In that litigation, the plaintiffs proposed nitrogen hypoxia as an alternative method 

of execution. When Alabama added nitrogen hypoxia as an alternative execution method, 
the plaintiffs’ claims in that action were essentially mooted. Indeed, after June 1, 2018, 
they all elected nitrogen hypoxia, and In re: Alabama Lethal Injection Protocol Litigation 
was dismissed without prejudice on the parties’ joint motion to dismiss. Id., Docs. 429-30. 
 3. Distribution of the election form during election period 

 Defendants state that Reeves was given a nitrogen hypoxia election form but “he 
was not among the inmates who made the election.” (Doc. 11 at 18.)5 Reeves does not 
dispute that statement but points out that “[i]f the ADOC distributed an opt-in form, it did 
so no later than June 26, 2018–four days before the deadline.” (Doc. 1 ¶ 33.) Reeves states 

that no matter when he received the election form, due to his intellectual disability, he was 
unable to “personally make the decision to elect a method of execution.” (Doc. 1 ¶ 34.) 
To the extent there may be a factual dispute as to when Reeves received the election form, 
it has no impact on the Court’s consideration of Defendants’ motion to dismiss Reeves’ 
ADA claim. 

4 Reeves was not one of the plaintiffs in the midazolam litigation. 

5 Citations to page numbers in documents filed in this case will be to the page number generated 
by the Court’s CM/ECF system. 
 4. No execution protocol developed for nitrogen hypoxia 
 When the Alabama Code was amended to add nitrogen hypoxia as a second 

alternative execution method, and throughout the election period, the ADOC had yet to 
develop a protocol for performing nitrogen hypoxia executions. Defendants state that “the 
ADOC is still in the process of developing a safe protocol. . . .” (Doc. 11 at 20.) The lack 
of a nitrogen hypoxia protocol is immaterial to the Court’s consideration of Defendants’ 
motion to dismiss. 

 C. Reeves’ Claims 
 In his complaint filed on January 10, 2020, Reeves asserts two federal claims: (1) 
Alabama’s three-drug, lethal injection protocol method of execution violates his right to be 
free from cruel and unusual punishment under the Eighth Amendment to the U.S. 
Constitution; and (2) Alabama violated his statutory rights under the ADA by failing to 

afford him, an intellectually disabled person, a reasonable accommodation so that he could 
elect nitrogen hypoxia as his execution method. 
 II. STANDARD OF REVIEW 
 A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the 
legal standard set forth in Rule 8: “a short and plain statement of the claim showing that 
the pleader is entitled to relief.” Fed. R. Civ. P. 8(a)(2). “To survive a motion to dismiss, 

a complaint must contain sufficient factual matter, accepted as true, to ‘state a claim to 
relief that is plausible on its face.’” Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting 
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). “Determining whether a complaint 
states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing 
court to draw on its judicial experience and common sense.” Id. at 663 (alteration in 
original) (citation omitted). 
 The plausibility standard requires “more than a sheer possibility that a defendant 

has acted unlawfully.” Iqbal, 556 U.S. at 678. Conclusory allegations that are merely 
“conceivable” and fail to rise “above the speculative level” are insufficient to meet the 
plausibility standard. Twombly, 550 U.S. at 555, 570. This pleading standard “does not 
require ‘detailed factual allegations,’ but it demands more than an unadorned, the-
defendant-unlawfully-harmed-me accusation.” Iqbal, 556 U.S. at 678. Indeed, “[a] 

pleading that offers ‘labels and conclusions’ or ‘a formulaic recitation of the elements of a 
cause of action will not do.’” Id. 
 III. DISCUSSION 

A. Eighth Amendment lethal injection claim 

 Reeves is subject to execution by Alabama’s three-drug, lethal injection protocol. 
He asserts that the use of midazolam in this protocol violates the Eighth Amendment. 
Reeves recognizes that in order to challenge Alabama’s lethal injection execution method, 
he must “identify a known and available alternative method of execution that entails a 
lesser risk of pain.” Glossip v. Gross, 135 S.Ct. 2726, 2731 (2015). To comply with 
Glossip, Reeves points to nitrogen hypoxia as an alternative to lethal injection. He implies 
that after Senate Bill 272 became effective on June 1, 2018, he would have elected nitrogen 
hypoxia as his execution method within the thirty-day window provided, but for his 
intellectual disability and the ADOC’s failure to afford him a reasonable accommodation 
under the ADA. He also implies that if afforded a reasonable accommodation, he would 
have made the nitrogen hypoxia election. 
 Regardless of the alternative execution method Reeves proposes to Alabama’s 

three-drug, lethal injection protocol, his Eighth Amendment challenge to this protocol is 
untimely because he failed to raise it within the prescribed limitations period. “All 
constitutional claims brought under § 1983 are tort actions, subject to the statute of 
limitations governing personal injury actions in the state where the § 1983 action has been 
brought,” McNair v. Allen, 515 F.3d 1168, 1173 (11th Cir. 2008). In Alabama, the statute 

of limitations applicable to personal injury actions is two years. West v. Warden, 869 F.3d 
1289, 1298 (11th Cir. 2017) (citing McNair, 515 F.3d at 1173). See also, Ala. Code § 6-
2-38(l). Further, “a method of execution claim accrues on the later of the date on which 
state review is complete, or the date on which the capital litigant becomes subject to a new 
or substantially changed execution protocol.” McNair, 515 F. 3d at 1168, 1174. 

 At the time Reeves was sentenced, Alabama executed inmates by electrocution. On 
July 1, 2002, Alabama adopted lethal injection as its preferred form of execution and gave 
inmates already on death row 30 days in which to opt out and select electrocution as the 
method by which they would die. Reeves did not opt out of the new protocol; therefore, 
he became subject to death by lethal injection on July 31, 2002. See McNair, 515 F. 3d at 

1171. Because lethal injection was a new execution protocol, the statute of limitations 
began to run for Reeves to challenge its constitutionality on July 31, 2002. Since the 
applicable statute of limitations is two years, McNair, 515 F.3d at 1173, Reeves had to file 
his challenge by July 31, 2004. 
 Approximately ten years later, on September 10, 2014, the ADOC substituted 
midazolam for pentobarbital as the first drug administered in the lethal injection protocol. 
Assuming that the ADOC’s switch to midazolam represented a “new or substantially 

changed execution protocol[,]” McNair, 515 F. 3d at 1168, 1174, that change started the 
clock again on September 10, 2014, thereby expiring two years later on September 10, 
2016. 
 It is well settled that, when the complaint shows on its face that the limitations period 
has expired, a statute-of-limitations defense may be raised on a motion to dismiss for failure 

to state a claim upon which relief can be granted under Fed. Rule Civ. P. 12(b)(6). See 
AVCO Corp. v. Precision Air Parts, Inc., 676 F.2d 494, 495 (11th Cir. 1982) (party may 
seek dismissal based on statute-of-limitations defense pursuant to Rule 12(b)(6)); Mann v. 
Adams Realty Co., 556 F.2d 288 (5th Cir. 1977); Mooney v. Tallant, 397 F. Supp. 680 
(N.D. Ga. 1975). 

 Consequently, Reeves’ Eighth Amendment challenge to the use of midazolam, 
asserted in his § 1983 complaint filed on January 10, 2020, is time-barred, having expired 
on September 10, 2016. The addition of nitrogen hypoxia in 2018 as a second alternative 
execution method to Alabama’s primary method of execution–lethal injection–has no 
impact on the statute of limitations as to the midazolam clock, because a § 1983 claim 

based on that protocol expired years ago on September 10, 2016. 
 Although Reeves sufficiently pled an Eighth Amendment claim, it is clear from the 
face of the Complaint that the claim is time-barred. Reeves’ Eighth Amendment claim will 
be dismissed, not because of insufficient pleading but because it is untimely. 
B. The ADA claim 

 To state a claim under Title II of the ADA, a plaintiff must allege: 
 . . . (1) that he is a “qualified individual with a disability;” (2) that he 
 was “excluded from participation in or . . . denied the benefits of the 
 services, programs, or activities of a public entity” or otherwise 
 “discriminated [against] by such entity”; (3) “by reason of such 
 disability.” 
Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001) (quoting 42 U.S.C. § 12132). 
 Starting from the premise that he is intellectually disabled, Reeves posits that he has 
satisfied the three-pronged test necessary to state a Title II claim under the ADA, as 
recounted in Shotz. As to the first prong, Reeves asserts that because of his intellectual 
disability, he is a “qualified individual with a disability.” Reeves avers that he has satisfied 
the second prong, again pointing to his alleged intellectual disability, because he was 
unable to opt-in to nitrogen hypoxia during the 30-day election window; however, Reeves 
offers no explanation as to how his intellectual disability prevented him from making that 
election. Reeves contends that he has satisfied the third prong because, given his 
intellectual disability, he was unable to choose nitrogen hypoxia within the election 
window “by reason of such disability”, but again he offers no explanation to support this 
conclusory statement. 

 Defendants counter that Reeves is not intellectually disabled; therefore, he has failed 
to state a claim under the ADA for which relief can be granted. To support their argument, 
Defendants point out that the issue of Reeves’ intellectual disability was litigated in 
Reeves’ Rule 32 proceedings in which the Rule 32 court held an evidentiary hearing where 
both parties presented medical expert testimony concerning his intellectual disability. 
Subsequently, the Rule 32 court resolved this claim against Reeves, finding that he had not 
proved this claim by a preponderance of the evidence. The ACCA affirmed the Rule 32 
court’s finding. Reeves v. State, 226 So. 3d 711, 722 (Ala. Crim. App. 2016). 

 As previously stated, Reeves then raised his Atkins claim in a federal habeas petition 
filed pursuant to 28 U.S.C. § 2254. The federal district court concluded that he was entitled 
to no relief thereon. Reeves v. Dunn, No. 1:17-cv-061-KD (S.D. Ala. Jan. 8, 2019), Doc. 
29. Reeves appealed the denial of his habeas petition to the Eleventh Circuit, which is 
considering “whether Mr. Reeves is intellectually disabled and therefore ineligible for the 

death penalty.” Reeves v. Comm’r Ala. Dep’t of Corrs., No. 19-11779-P (11th Cir. Sept. 
19, 2019). Oral argument on this issue and others is scheduled before the Eleventh Circuit 
on August 19, 2020. 
 Thus, the issue of whether Reeves is intellectually disabled is unresolved, and it is 
premature to determine whether the ADA applies. Accordingly, Defendants’ motion to 

dismiss Reeves’ ADA claim is denied. 
 IV. CONCLUSION 
 For the reasons stated, it is ORDERED that Defendants’ Motion to Dismiss pursuant 
to Federal Rule of Civil Procedure 12(b)(6), (Doc. 11), is GRANTED IN PART and 
DENIED IN PART, as follows: 

 1. To the extent of Reeves’ Eighth Amendment method-of-execution claim (Count 
1), Defendants’ motion to dismiss is granted because the Eighth Amendment claim is time-
barred. 
 2. To the extent of Reeves’ ADA claim (Count 2), Defendants’ motion to dismiss 
is denied without prejudice because the issue of Reeves’ alleged intellectual disability has 
not been resolved. 

 DONE, this 4th day of August, 2020. 

 /s/ R. Austin Huffaker, Jr. 
 R. AUSTIN HUFFAKER, JR. 
 UNITED STATES DISTRICT JUDGE